THE STATE v. HENDERSON RANSOM and ESTEL JOHNSON, Appellants.—
100 S. W. (2d) 294.

Division Two, December 23, 1936.

*Bradley & Noble* for appellants.

*Roy McKittrick*, Attorney General, and *Wm. W. Barnes*, Assistant Attorney General, for respondent.

COOLEY, C.—Appellants were convicted of robbery in the first degree committed by means of a deadly weapon, a pistol. Each was sentenced to ten years' imprisonment in the penitentiary and both have appealed. They were charged and tried together below, filed a joint motion for new trial, which was overruled, and have filed a joint brief here on appeal.

The State's evidence tended to show the following:

J. F. Ladd owned a service station on State Highway No. 25, about two and three-quarters miles west of Cardwell, in Dunklin County, at which gasoline was sold, also lunches, cigars, cigarettes, etc. It was kept open day and night. The robbery occurred about five o'clock Sunday morning, December 16, 1934, at which time two young men, Lester Stewart and Jethro Harrell, employees of Ladd, were in charge of the place and were alone there. Stewart stepped outside and about ten feet from the door, leaving Harrell asleep on a cot in a back room of the station. While Stewart was thus outside one of the robbers, identified as Ransom, approached, coming from behind a parked car or a pile of gravel, and, exhibiting a pistol, ordered Stewart to "stick 'em up." Ransom then directed Stewart to "march out toward the south,"—which was toward the rear of the station—and compelled him to lie down. As Stewart was walking south he saw the other robber, identified as Johnson, approaching. After Stewart had lain down it appears he was raising his head, trying to get a view of his assailants, and Johnson said to him: "Get that God damn head down or I will bust you over the head with this." Johnson had a pistol in his hand. Ransom then went inside, waked Harrell, brought him out and compelled him to lie down beside Stewart. Then, while Johnson remained with Stewart and Harrell, "guarding" them and compelling them to keep their heads down, Ransom went inside and, as shown by subsequent examination, took from the cash drawers about $38 in money and also took a revolver and some cigars and cigarettes. The robbers also searched Stewart and Harrell but it is not shown that they found upon or took from them any money. They then left in an automobile, telling Stewart and Harrell not to get up until they heard the car start. Stewart at once notified Mr. Ladd, who was at his home about a quarter of a mile away, and the latter came to the station. An examination of the premises was made, by which was ascertained that the money and articles above mentioned had been taken.

It was shown that about twelve o'clock that night,—some five hours before the robbery—Ransom and another man, not Johnson, and three women had stopped at the station and bought gasoline. They were in a Ford V-8 four-door sedan, which belonged to Ransom. Stewart described it as "dark blue or black," with yellow wheels. He testified that he saw the car in which the robbers left the service

station, which he described as "A black sedan. A two-seated V-8 with yellow wheels."

Neither Stewart nor Harrell recognized either of the robbers by sight. But neither had very good opportunity for observation. Ransom's features could not be seen, as he had on glasses or goggles and a cloth of some kind over his face, and they could not get a good look at Johnson because he made them keep their heads down. Moreover it appears from the weight of the evidence that it was rather dark and somewhat foggy outdoors and there was no opportunity for observation under the lights of the station. Both said witnesses, however, testified that they recognized each of their assailants at the time by his voice and thus identified defendants as the robbers. Their testimony on this point was clear and positive and was not shaken or weakened on cross-examination. Both testified to a sufficiently long and intimate acquaintance with defendants and familiarity with their voices to make it appear plausible that they could recognize defendants' voices.

Defendants both testified, denying their alleged implication in the robbery and each giving an account of his whereabouts that night, placing him elsewhere than at the scene of the crime. The alibi evidence was supported by the testimony of a number of witnesses. Also several witnesses testified that at the time of the robbery Ransom was and had been for several days, suffering from a severe cold and hoarseness and did not speak in his natural voice. Such further reference to the facts as may be necessary will be given in the course of the opinion.

■ Appellants contend that the evidence is not sufficient to support the verdict. From their brief and argument here this contention seems to be that the State's evidence as to the identity of appellants as the men who robbed the service station was so overwhelmingly contradicted by witnesses for defendants that it ought not be considered sufficient. They say: "We appreciate the fact that one may be identified by voice alone, but this record discloses that both Stewart and Harrell said that the voices of the defendants were natural, whereas there is hardly any escape from the conclusion upon the evidence of the witnesses for the defendants that the defendant Ransom at the time was suffering from a cold and that his voice at that time was not natural," and they refer also to the "wealth of evidence" offered by defendants in support of their alibi.

We have heretofore held that identification of a person by means of his voice is direct evidence of identification and on that issue makes a submissible case. [State v. Bell (Mo.), 300 S. W. 504; State v. Riddle, 324 Mo. 96, 23 S. W. (2d) 179.] But since appellants concede that identification may be made by the voice alone we need not further discuss that question. We have not detailed the testimony of defendants' witnesses tending to show that at the time in question Ran-

som was hoarse and did not speak in his natural voice, deeming it unnecessary to take time and space so to do. Suffice it to say that defendants' evidence on that question was by no means so overwhelming or conclusive as to destroy the probative value of the State's evidence. It left that issue a question for the jury. So, also, as to the evidence relative to alibi. Defendants' alibi evidence was at least no stronger—we think less impressive—than in State v. Scobee et al., 331 Mo. 217, 53 S. W. (2d) 245, wherein we held the question to be one for the jury. We hold that the evidence in the instant case was sufficient to make the case submissible and to support the verdict.

■ Appellants charge error in that the prosecuting attorney was permitted to read the information to the jury, citing as authority State v. Richards, 334 Mo. 485, 67 S. W. (2d) 58. In that case we held that the prosecuting attorney's affidavit or verification attached or appended to the information should not be read to the jury but we did not hold that it is error to permit the information itself to be so read. On the contrary we ruled that the reading of the information to the jury cannot be considered as prejudicial to the defendant. We adhere to that ruling.

■ It is assigned as error that the prosecuting attorney was permitted to ask witness Stewart if defendant Johnson said to him, "Get your God damn head down," the alleged error being that the question was leading and suggestive. Stewart had aleady testified without objection that Johnson said to him, "Get that God damn head down or I will bust you over the head with this." He was asked what Johnson had in his hand and answered that he had a gun,—and then was asked the question, "And said to get your God damn head down?" It was to this last question that objection was made, on the ground that it was "leading and repetition." The objection being overruled the witness again stated, in the same language he had used the first time, what Johnson had said. We are unable to perceive how defendants could have been prejudiced by the form of the question objected to, since the question elicited no information that had not already been given. Like complaint is made of some other rulings of the court permitting leading questions, which, also, could not have prejudiced defendants.

■ In the motion for new trial there are several assignments of error relative to certain testimony of Stewart, Harrell and Ladd which can best be considered together. It is charged that the court erred:

(a) In permitting Stewart to testify that he told Ladd, on Sunday morning immediately after the robbery, who had robbed the station.

(b) In refusing to permit Harrell, on cross-examination, to answer a question as to why he had told Ransom's brothers he did not know who had robbed the station.

(c) In permitting Ladd to testify that *Stewart* had told him im-

mediately after the robbery who the robbers were and that he had recognized them.

Of (a): Stewart was asked on direct examination, "Did you tell Mr. Ladd who the parties were?" He answered, "I did." Then defendants' counsel said, "We object to what he told Mr. Ladd." The objection was overruled. Defendants' objection was not made until after the question had been answered and it does not appear that an objection could not have been interposed before the answer was given. No grounds for the objection were stated and there was no motion to strike out the answer. In these circumstances the court cannot be charged with reversible error. We have so often so ruled under similar circumstances that it is needless to cite the authorities. We, therefore, need not determine whether a timely objection, stating the grounds therefor, would have been good.

■ Of (b): The record does not bear out this contention. Harrell testified on cross-examination that on Monday morning after the robbery he told two of Ransom's brothers, Charley and Curtis, that he did not know who the robbers were. In eliciting this testimony appellants' counsel stated to the court that it was for contradiction of Harrell's testimony that he had recognized the robbers at the time of the robbery. Defendants' counsel did not ask him why he had told Charley and Curtis Ransom he did not know who the robbers were. On redirect examination he explained that those two had come to his room and he did not know what they wanted or what they might do to him and therefore simply told them he did not know. That explanation went in without objection. If defendants wanted it, as they now seem to think they did, they got it. Obviously this complaint is without merit.

■ Of (c): In this, as under (b), appellants seem confused as to the facts shown by the record. We do not find in the record that Ladd testified that *Stewart* had told him who robbed the station or that he, Stewart, had recognized the men. Ladd did testify, over defendants' objections, that *Harrell* told him on Sunday morning and immediately after the robbery that he had recognized the robbers. He was not permitted and did not attempt to state who Harrell said the men were. He was allowed to state only, in substance and effect, that Harrell had said that he had recognized the robbers.

Harrell had already testified that he recognized the robbers at the time of the robbery, which, as we have stated, occurred on Sunday morning. Ladd testified that Harrell's statement to him was made that morning. The defendants had proved that thereafter, on Monday morning, Harrell had said that he had *not* recognized the robbers, such proof being offered to contradict Harrell's testimony and to that extent impeach him. The court admitted Ladd's testimony on this point on the theory that it was competent for the State to rehabilitate the witness. Harrell, by proof that immediately after

the robbery and prior to the impeaching statement contradictory of his testimony, he had made statements in harmony with his testimony. The court's ruling is sustained by State v. Sharp, 183 Mo. 715, 82 S. W. 134, in which the question is discussed and authorities cited. [See, also, to like effect, State v. Stogsdill, 324 Mo. 105, 126, 23 S. W. (2d) 22, 30 (18-19), and cases cited.]

Both defendants were asked on cross-examination if they had been previously convicted of crime and both answered affirmatively. Each was asked and, over his objection, required to state the nature of the crime of which he had been convicted. Ransom had been convicted of robbery, Johnson of grand larceny. Appellants contend that it was prejudicial error to compel them to disclose the nature or kind of the crimes of which they had been convicted. It is provided by statute, Section 1752, Revised Statutes 1929 (Mo. Stat. Ann., p. 4021), that any person who has been convicted of crime is, notwithstanding, a competent witness, but the conviction may be proved, either by the record or by cross-examination of the witness, to affect his credibility. We have uniformly held that this statute applies to a defendant in his capacity of witness. By another section, 3692, Revised Statutes 1929 (Mo. Stat. Ann., p. 3242), it is provided, among other things, that a defendant who testifies as a witness, "may be contradicted and impeached as any other witness in the case." If the proof of prior conviction is made by the record, the record will disclose the nature of the crime. Since the statute permits proof *either* by the record or by cross-examination it cannot be the intendment of the statute to restrict the proof, if made by cross-examination, to proof that the witness has committed "*a* criminal offense," without disclosing the kind or character thereof, when, if the other method of proof is adopted, such latter fact is necessarily disclosed, the purpose of the proof and the reason for allowing it being the same whichever method of proof is adopted. Moreover the conviction is permitted to be proved to affect the credibility of the witness. The jury must determine the credibility of witnesses. It needs no argument to demonstrate that conviction of an offense of one kind, say a trivial misdemeanor, would not affect the credibility of a witness to the same extent as would conviction of some heinous offense involving moral turpitude. If the question were one of first impression we would have no hesitation in holding that the court committed no error in admitting the proof under consideration. It has, however, been decided at least once before by this court, adversely to appellants' contention, in State v. McBride (Mo.), 231 S. W. 592, 594, wherein this court said, (l. c. 594) "If the defendant may be impeached as any other witness, it is not only proper to show that he had been convicted but to show of what crime he had been convicted." Appellants seem not to have noticed that decision. At any rate the question keeps recurring, hence our above observations relative thereto.

There are numerous other assignments of error relating to the admission and exclusion of evidence, including complaints of the scope allowed the prosecuting attorney in cross-examining the defendants and that proper foundation was not laid for proof of certain extra-judicial statements of defendants' witnesses contradictory of their testimony on the witness stand. We have examined these assignments and find no prejudicial error in the rulings complained of.

Appellants complain of Instruction No. 2. That was an instruction on credibility of witness. Appellants complain only of the last few words. The second and last paragraph, containing the words complained of and which we italicize, reads:

"If you find that any witness has willfully sworn falsely to any material fact at issue in this cause, you should disregard such part of his or her testimony and are at liberty to disregard the entire testimony of such witness *which you may conclude is not worthy of belief.*"

Appellants argue that by the addition of the italicized words the jury were told that they could disregard the testimony of *any witness,* whether they believed the witness had testified falsely or not. This is a clear misapprehension of what the instruction says. It tells the jury that if they believe "any witness" has sworn falsely, etc., they should disregard the false testimony and might disregard the entire testimony of "*such*"—not "*any*"—witness, which (testimony of *such* witness) they might conclude to be unworthy of belief.

Except for the addition of the italicized words the instruction is not criticized and is substantially in form such as has been often approved. The addition of those words certainly does not make it prejudicially erroneous.

The giving of Instruction No. 6, the principal instruction, submitting the case, is assigned as error. The only reason alleged for this assignment is that there was no substantial evidence that either defendant committed the robbery. We have disposed of that contention.

Instruction No. 8 is complained of. It reads:

"The Court instructs the jury that any evidence of prior conviction of the defendants, if any, are to be received, not as any evidence of the defendants' guilt in this case on trial, but is received by the jury solely and exclusively for the purpose of affecting his or their credibility, if any, as a witness in this case."

The contention here is that, while the use of the words, "if any" would have been proper enough after the word "affecting," they were improperly and prejudicially used after the word "credibility" and apparently applying thereto, thereby implying to the jury a doubt on the part of the court as to whether the defendants, as witnesses, had any credibility. We think the words "if any" should not have been used as and where they were in the instruction. But

in our opinion such use, whether inadvertent, as it probably was, or intentional, could not have misled the jury. The clear purpose of the instruction was to tell the jury that the prior convictions could not be considered as any evidence of defendants' guilt of the crime charged but only as affecting their credibility as witnesses. We do not believe the jury could reasonably have gotten the impression from it that the court was suggesting or intimating any opinion as to the defendants' credibility.

Instruction No. 9, on alibi, is criticized. It is claimed that said instruction is argumentative, a comment on the evidence and "does not properly declare the law of alibi." We do not regard the instruction as either argumentative or a comment on the evidence, and no reason is pointed out by appellants either in their motion for new trial or brief, why it does not properly declare the law of alibi. The court gave, at defendants' request, an instruction on alibi, after modifying it by striking out a portion thereof, which instruction as given fully and clearly declared the law on that subject, exept that it assumed, as the State's instruction did not, that a crime had been committed. Appellants do not complain of that assumption and of course cannot, it being their own. The two instructions, as given, are not in conflict. If there are any deficiencies in the State's instruction—we do not say there are—they are fully supplied by defendants' instruction as given. Read together, as they should be, they fully and with fairness to defendants declare the law. No useful purpose could be served by setting out these instructions. Sufficient approved forms of instructions on alibi are to be found in our published reports.

In this connection appellants complain of the action of the court in modifying their requested instruction on alibi by striking out a portion thereof. The portion stricken out consisted of language attempting to explain or define reasonable doubt. Of such an attempt this court well said, in State v. Sykes, 248 Mo. 708, 713, 154 S. W. 1130, quoting from State v. Robinson, 117 Mo. 649, 661, 23 S. W. 1066: "It is difficult to explain simple terms like 'reasonable doubt' so as to make them plainer. Every attempt to explain them renders an explanation of the explanation necessary." The modification in question was proper.

Defendants requested an Instruction 5-D, which, like the portion of defendants' requested alibi instruction which was deleted, attempted to explain the meaning of reasonable doubt, though in different language. For the reasons stated above we think the court properly refused it. The jury were sufficiently instructed on reasonable doubt and in oft approved form.

Defendants requested and the court refused some other instructions which we deem it unnecessary to set out or discuss. We have examined them, together with all the given instructions, and are con-

vinced that the propositions sought to be stated by said refused instructions were sufficiently submitted by those given.

We are again confronted with the oft recurring and ever vexing question of improper argument by the prosecuting attorney. No part of the prosecutor's argument is preserved in the bill of exceptions. All we have before us is that in the closing argument this occurred:

By defendants' counsel: "I object to the statement of the prosecuting attorney that the defendant, Henderson Ransom, makes his living off the people by robbery and sticking up, and I ask that he be reprimanded and that the jury be discharged and this submission be set aside and counsel be rebuked."

By the prosecuting attorney: "I am following the evidence as near as I can."

BY THE COURT: "You went a little beyond the evidence. Sustained."

BY DEFENDANTS' COUNSEL: "We except to the refusal—"

BY THE COURT: "Wait a minute. I am not through. And the jury are instructed to disregard the statement that he makes his living by doing thus and so. The remark made by the Prosecuting Attorney, 'as shown by his evidence,' might cure his remarks so far as this case is concerned but it doesn't include his occupation or the way he makes his living for that is not in the evidence, and it is inflammatory and improper and Mr. Ford, you are rebuked for it and the jury are instructed to disregard it. Proceed. Stay within the record and don't use any inflammatory epithets in your argument."

Nothing further appears. Although we have not before us the prosecutor's language nor its context it can be gleaned from the foregoing that he made some statement not supported by the evidence. But the court promptly sustained defendants' objection, rebuked the prosecutor and directed the jury to disregard the statement, following which no request was made for further action by the court and no exceptions were taken to the court's action or to its failure to take other or further action. Defendants seemingly acquiesced in and were satisfied with what the court had done. They cannot now, therefore, as we have often held, successfully urge that prejudicial error was comitted against them in this matter.

We have not mentioned specifically all of the forty-two assignments of error in defendants' motion for new trial, which are condensed (?) into thirty-three points in their brief here. To do so would lengthen the opinion beyond all reasonable bounds. But we have examined and considered all of them and we find no reversible error. The judgment is affirmed. *Westhues* and *Bohling*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.