STATE of Missouri, Respondent,

v.

Joseph Kern DEGRAFFENREID, Appellant.

No. 55211.

Supreme Court of Missouri,
En Banc.

March 13, 1972.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

William C. Cockrill, Springfield, for appellant.

BARDGETT, Judge.

This case is written on reassignment. In writing this opinion, substantial portions of a prior opinion, written, but not adopted by the court, are used without employing quotation marks.

Appeal from a judgment of conviction of burglary, § 560.040, V.A.M.S., and grand stealing, §§ 560.156, 560.161, V.A.M. S., and concurrent sentences of 4 years imposed upon Joseph Kern Degraffenreid following a jury trial.

The state's evidence: While Mr. and Mrs. Hasler were away from their residence in Springfield on September 10, 1968, and at about 2:00 p. m., A. E. Gaston, a 78-year-old neighbor who lived across the street, observed three men carrying furniture out of the front door of the Hasler residence, load it into a truck and drive away. He took the license number and gave it to Mrs. Hasler after she came home and found various items missing from the house. The next day Mr. Gaston selected defendant's photograph from a number of photographs ("mug shots") shown to him by a detective and identified the photograph as the picture of one of the three men he had seen the previous afternoon. At police headquarters that same day Mr. Gaston picked defendant from a lineup conducted by the police department. At the trial Mr. Gaston testified that he got a look at all three men for "longer than a minute"; that he had a "full-face" view of defendant, and a side view and rear view of him while he was standing by the truck about 75–80 feet away and across the street from his house. The license number was traced to defendant, owner of the truck bearing that number, who was arrested and charged with burglary and stealing. At the trial the detective corroborated Mr. Gaston's testimony about the mug shots and the lineup.

Defendant denied participation in the burglary and stealing. He testified that he loaned the truck to one Donnie Wright on the day in question; that for half an hour

before and two hours after the time the burglary was supposed to have taken place he was at Simmons Auto Body Shop in Springfield.

■ Citing cases for the proposition that to make a second-degree burglary case there must be evidence that there was a breaking and entering; that if the doors and windows are left open there can be no burglary, and that there must be evidence that the doors and windows were closed prior to the time the defendant entered the building, defendant contends that the evidence was insufficient to show that entry to the residence was gained by opening a closed door. The affirmative testimony of Mr. Hasler, the last to leave the residence, that he closed the door and that he would say the door was closed was qualified by statements that he could not be "absolutely positive" but he was "almost positive" it was closed. This testimony is sufficiently removed from the category of speculation and conjecture to constitute substantial evidence sufficient to sustain a conviction based upon a finding that the door was closed. A witness is not required to speak with such confidence as to exclude all doubts in his mind; his qualification of his testimony affects only its probative force. Leathers v. Sikeston Coca-Cola Bottling Co., Mo.App., 286 S.W.2d 393, 396[3]; 30 Am.Jur.2d, Evidence § 1081, p. 228. It is for the jury to weigh the evidence given. State v. Brinkley, 354 Mo. 337, 189 S.W.2d 314, 323[20].

■ The courtroom identification of defendant is challenged on the ground that the police lineup was conducted without notice to defendant and without the presence of counsel in violation of his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to the assistance of counsel. The lineup was conducted on September 13, three days after the crime. Before the lineup was conducted defendant signed a written paper reciting that he had been advised that he might have his lawyer or any member of

his family or anyone he desired to be present while the lineup was being conducted, leaving blank the place for the names of persons requested to be present. This constituted a waiver of the point now sought to be raised. There was no objection prior to trial or at the time the witness Gaston testified relating to the identification of defendant at the lineup. The first mention of this objection was in defendant's motion for new trial. The point therefore was not preserved for appellate review. State v. Brownridge, Mo., 459 S. W.2d 317, 320[8]; State v. Franklin, Mo., 448 S.W.2d 583, 584; State v. Hampton, Mo., 430 S.W.2d 160, 163.

■ Defendant assigns error in the refusal of defendant's offered instruction A on the burden of proof, the presumption of innocence and reasonable doubt, instead of which the court gave instruction 7. Defendant does not seek to impeach instruction 7 as an improper statement of the law, simply maintaining that his instruction A was a proper statement of the law and would have been "fairer" to him than No. 7. Instruction 7 is the standard instruction on these subjects which has been given in criminal trials in this State for generations, and approved many times. See State v. Brown, Mo., 360 S.W.2d 618, 620. When a court has fully and properly instructed on a subject, there is no error in refusing further instructions on the subject. See numerous cases so holding collected in 9A Mo.Dig., Criminal Law, ⊜829(1).

■ Defendant complains of the giving of instruction 5, the first paragraph of which instructed that "all persons are equally guilty who act together with a common intent in the commission of a crime, and a crime so committed by two or more persons jointly is the act of all and of each one so acting." This paragraph is criticized on the theory that defendant loaned his truck to a person who subsequently admitted involvement in the burglary, and that this fact, having been

known to the jury, could have been interpreted and could have been the basis of an inference that merely lending his truck was sufficient to convict, even though defendant was not one of the three who entered the house and loaded the furniture. No such interpretation or inference could reasonably have been made or drawn, in view of the requirement in the instruction that the jury find that defendant acted together with others in a common intent to commit a crime. Lending a truck without knowledge of its intended use would negative common intent to commit a crime by use of the truck. Paragraph 2 of the main verdict-directing instruction in State v. Reece, Mo., 324 S.W.2d 656[9], in almost identical language, was upheld as a proper definition of joint commission of a crime, against charges of generality and inadequacy.

■ The second paragraph of instruction 5 advised the jury that ". . . when two or more persons knowingly act together in the commission of an unlawful act or purpose, then whatever any does or says in the presence and hearing of each other in furtherance of such unlawful act or purpose is in law the act and deed of each such person." This is a correct instruction, which would not permit the jury to convict defendant for the loan of the truck without knowledge of its intended use. It requires that defendant "knowingly" act with another or others in the commission of an unlawful act before their act is the act of the defendant.

■ Defendant objects to the giving of that portion of instruction 1, the main verdict-directing instruction, which submits burglarious breaking and entry of a door of the dwelling house, for the reason that the state did not prove a breaking and entry (as argued under defendant's first point). Opening of a closed and unlocked door with burglarious intent is sufficient to render an entry thus effected burglary, State v. Rhodes, Mo., 408 S.W.2d 68, 70[3], and such an opening was sufficiently proved by Mr. Hasler's testimony that the door was closed by him when he left and Mr. Gaston's testimony that three men, including defendant, were carrying furniture out of the front door.

■ Defendant takes exception to the admission in evidence of the testimony of police officer Bill Brew showing the circumstances surrounding the arrest of defendant three days after the crime was committed. He testified that he had been given a description of the truck, the license number and the name of the owner, and was instructed to pick up Joseph Kern Degraffenreid; that he observed this truck turning off Sunshine onto Fort; that he and officer Morton stopped the truck, checked the license, arrested defendant and advised him of his constitutional rights. That there were two other people in the truck at the time was divulged by the prosecutor's question, "Without naming the other two people in the truck, what else did you observe in the truck?" Defendant argues that it was highly prejudicial to permit officer Bill Brew to testify that he saw defendant "with two other men" on this day in this particular vehicle, three days after the crime; that this had no bearing on the guilt or innocence of defendant, other than the prejudicial inference which the jury undoubtedly drew, that defendant was one of the three persons who committed the burglary, and cites authority for the proposition that the prosecution is not permitted to introduce evidence of the circumstances of the arrest of the accused where the circumstances have no probative value in establishing his guilt. The court did not err. In the first place, the officer did not testify that there were two other men in the truck with defendant on the day of the arrest. While this may have been implied in the prosecutor's question, the officer did not so testify. In the second place, there was no objection to the revelation by the prosecutor that there were two other "people" (who may or may not have been *men*) in the truck. The only objection made by defendant's counsel

during the direct testimony of officer Brew was an objection made after Brew named three persons whom he had been instructed to pick up for investigation. That objection was sustained. In the third place, defendant's presence in and connection with the truck identified as the vehicle used in the burglary was relevant on the question of defendant's guilt.

The issue decisive of this appeal is presented by the defendant's contention that it was error for the court, over defendant's objection, to admit into evidence testimony of police officer Smith (1) that the identifying eyewitness Gaston identified a photograph of defendant on the day after the burglary and (2) that identifying witness Gaston identified defendant by selecting him out of a lineup a few days later. The foregoing testimony was admitted in the state's case in chief on direct examination by the prosecuting attorney and without there being any impeachment of the testimony of identifying witness Gaston with respect to Gaston's testimony that he identified a photo of defendant the day after the burglary and subsequently identified defendant by selecting him out of a lineup, nor any evidence of a prior inconsistent statement of Gaston. Defendant's objection to this testimony was that it was cumulative, repetitious, lacked probative value and was prejudicial.

 In order that the issue may be clearly in focus, we note that the admissibility of the testimony of identifying witness Gaston is not questioned. As an identifying witness, his testimony concerning his extrajudicial identification of defendant by means of a photograph as well as by selecting defendant out of a lineup is admissible. State v. Rima, Mo. (Banc) 395 S.W.2d 102; State v. DePoortee, Mo., 303 S.W.2d 920, 924; State v. Buschman, 325 Mo. 553, 29 S.W.2d 688, 692.

In the instant case the state acknowledges that it went one step further than that permitted in State v. Rima, supra, and introduced testimony of officer Smith that

identifying witness Gaston identified defendant by means of a photograph and subsequently identified him again by selecting defendant out of a lineup. No Missouri cases have been found approving the admission of such testimony when given by persons other than the identifying witness (except where the testimony of third persons was introduced to rehabilitate the identifying witness after he had been impeached, *viz.* State v. Ransom, 340 Mo. 165, 100 S.W.2d 294; State v. Simmons, Mo., 39 S.W.2d 774).

In State v. Fleming, 354 Mo. 31, 188 S.W.2d 12, a judgment was reversed for admission of an officer's testimony with reference to statements of the prosecutrix relating to her complaint, including the prosecutrix's identification of the defendant. Although the court in State v. Fleming relied in part on State v. Baldwin, 317 Mo. 759, 297 S.W. 10 (upon which defendant places his chief reliance), the court held that its decision in Fleming was within and not contra to State v. Buschman, supra, 29 S.W.2d 688. State v. Fleming dealt directly with the issue presented on this appeal and held that testimony of third persons corroborating the fact that the identifying witness identified defendant was not admissible absent the introduction of evidence to establish statements contradicting the testimony given by the identifying witness. State v. Fleming has not been overruled.

In State v. Rima, supra, the identifying witness testified that subsequent to the robbery he saw Rima's photograph at the police station and thereafter again identified Rima in a lineup. The defendant Rima contended that this testimony of the identifying witness was inadmissible on the authority of State v. Baldwin, supra, 297 S.W. 10. This court held the testimony to be proper and distinguished the Baldwin case, saying loc. cit. 105 of 395 S.W.2d:

"However, defendant relies on State v. Baldwin, 317 Mo. 759, 297 S.W. 10, which involved testimony identifying a photo-

graph of the defendant therein by the prosecuting witness, and we further consider defendant's claim because we find the Baldwin case unsound on this issue. The theory of the Baldwin case was that testimony of a witness concerning his identification of a photograph of the defendant therein was inadmissible because it was considered as a prior consistent statement for corroboration before any impeachment of the witness. (297 S.W. l.c. 15, 16.) The Baldwin case overlooked the fact that the testimony therein of the identification of the defendant's picture was the direct testimony of the witness himself and not the testimony of another as to a prior statement or identification such witness had made. In State v. Buschman, 325 Mo. 553, 29 S.W.2d 688, 70 A.L.R. 904, this court pointed out that the authorities cited in the Baldwin case were cases in which the evidence rejected was testimony of third parties concerning a prior statement of a witness and not the testimony of the witness himself concerning identification."

The Baldwin case had apparently presented some confusion over the years, as this court then went on to hold in State v. Rima, supra, loc. cit. 106: "However, insofar as State v. Baldwin holds that direct testimony of a witness that he recognized a photograph of a defendant as a person he saw, at the commission of the offense involved, was inadmissible it should no longer be followed."

Thus the rule in Missouri as to testimony of a third person who heard or observed the extrajudicial identification of an accused by the identifying witness, as to the fact of such identification, is as set forth in State v. Fleming, supra, 188 S.W. 2d loc. cit. 16: "We think the better rule to be: Absent the introduction of evidence to establish statements contradicting the testimony given by the witness, impeachment resulting from mere cross-examination is insufficient to render admissible prior extrajudicial consistent statements; and even though the witness be impeached by prior inconsistent statements, extrajudi-

cial prior consistent statements on subject matters foreign to that on which the witness was impeached remain incompetent and inadmissible."

We recognize that there is a division of authority on the subject. (See annotation: "Admissibility of evidence as to extrajudicial or pretrial identification of accused", 71 A.L.R.2d 449, particularly §§ 13–19.) The state urges us to adopt a rule in Missouri so as to permit a third person to testify in corroboration of the identifying witness's testimony that the identifying witness did, prior to trial, identify the accused by photograph, lineup, or other method, in the prosecution's case in chief and without there being any impeachment of the identifying witness's testimony concerning the extrajudicial identification. Such a rule would be contrary to the holding of State v. Fleming, supra, and contrary to the rationale of State v. Buschman, supra, and State v. Rima, supra.

Furthermore such a rule would permit a party, the state, to provide itself with witnesses by the mere expedient of having one or more officers or others present at the various times the identifying witness pointed the accused out as being the culprit. *A fortiori*: the defendant could do likewise by merely saying to others, after a crime had been committed, that he was not present at the scene and the third person could then testify in corroboration of defendant's alibi testimony that defendant said he was not present at the scene of the crime.

In these instances the testimony of the corroborating witness would be basically hearsay. There is no substantial difference between the third person attesting that the identifying witness *told* the third person that "John Doe did it," or the third person attesting that the identifying witness *pointed* to John Doe's photograph or to John Doe in a lineup as being the culprit, or, on the other hand, to a third person testifying that John Doe told him he was not present at the scene and did not

commit the alleged offense. Such testimony is wholly lacking in probative value when the principal issue is whether the accused in court is the same person the identifying witness saw commit the crime and *not* whether the accused in court is the same person previously identified by the identifying witness in a lineup or by photograph.

It is not suggested the change urged by the state represents a need brought about by scientific or technological advancement. The state argues that the dangers sought to be avoided by the hearsay rule are obviated when the identifying witness is also present at trial and subject to cross-examination. This, of course, has always been the case. However, we believe that the practical effect on a jury of the third person's hearsay corroboration of the identifying witness's testimony concerning extrajudicial identification is to lend substantial credence to the identifying witness's testimony, and such credence is principally derived from the stature and character of the third person rather than the substantive basis for his testimony. In short, the third person is subject to cross-examination on the fact of the extrajudicial identification but obviously not with respect to the scene identification, and it is the credibility of the testimony relative to the scene identification that represents the principal issue in the case.

This is not to say that when, during the course of a trial, issues are created by impeachment of the identifying witness's testimony with respect to whether or not the witness identified the defendant in a lineup or by photographs that the testimony of those present at such extrajudicial identification is not admissible. It is admissible. State v. Ransom, 340 Mo. 165, 100 S.W.2d 294; State v. Simmons, Mo., 39 S.W.2d 774.

We have carefully considered the authorities from other jurisdictions cited by the state and conclude that the better and more sound rule is that enunciated in State v. Fleming, supra.

■ We therefore hold that the admission into evidence of the testimony of officer Smith concerning the extrajudicial identification of defendant was, on the record before us, error.

Whether or not the error in the admission of the questioned evidence operated to the prejudice of defendant must now be considered. The state suggests that the questioned testimony of officer Smith was not prejudicial because it was merely cumulative to the testimony of witness Gaston. It is true that officer Smith's testimony was cumulative. However to hold that the error was not prejudicial merely because it was cumulative would be to indirectly abolish the evidentiary rule against such testimony as it is the very nature of such testimony to be cumulative.

In the instant case the defendant was identified by one eyewitness, Mr. Gaston, as the culprit. The record indicates Mr. Gaston was strong and positive in his identification of defendant. The defense was basically alibi and in support of this position defendant and one other witness testified that defendant was at another place at the time of the offense. It is difficult for this court to conclude with any reasonable assurance of being correct that the testimony of officer Smith corroborating the identifying witness as to the two extrajudicial identifications did not, in the minds of the jurors, confirm the believability of Mr. Gaston's testimony and thereby tip the scales against defendant.

■ Harmless error is not grounds for reversal, State v. Spica, Mo., 389 S.W.2d 35, 53; however, error in the admission of evidence should not be declared harmless unless it is so without question. State v. Wynne, 353 Mo. 276, 182 S.W.2d 294, 300; State v. Richards, 334 Mo. 485, 67 S.W.2d 58, 61. In State v. Wynne, 182 S.W.2d loc. cit. 300, this court said: "The record does not demonstrate that the defendant was not injured by the error as by showing that the jury disregarded or could not have been influenced by the evidence. State v.

Nasello, 325 Mo. 442, 30 S.W.2d 132, 24 C.J.S., Criminal Law, §§ 1915, 1915(7), pp. 954–958, 980, 981."

We also are mindful that error which in a close case might call for a reversal may be disregarded as harmless when the evidence of guilt is strong. Thomas v. United States, 8 Cir., 281 F.2d 132, 136.

Bearing the foregoing propositions in mind, we cannot conclude that the jury disregarded or could not have been influenced by the erroneous evidence and consequently the judgment must be reversed and the cause remanded for new trial.

The judgment of the circuit court is reversed and the cause remanded for new trial.

PER CURIAM:

The foregoing opinion by BARDGETT, J., is adopted as the opinion of the Court En Banc.

Reversed and remanded.

HENLEY, J., concurs.

FINCH, C. J., concurs in separate concurring opinion filed.

DONNELLY, SEILER, and BARDGETT, JJ., and WEIER, Sp. J., concur and concur in separate concurring opinion of FINCH, C. J.

HOLMAN, J., dissents in separate dissenting opinion filed.

MORGAN, J., not sitting.

HOLMAN, Presiding Judge (dissenting).

I respectfully dissent. Officer Smith was permitted to testify that Mr. Gaston identified defendant as one of the guilty persons from a photograph shown him on the day following the burglary and also from a lineup a few days later. The principal opinion holds that that testimony constituted reversible error and the case is remanded for a new trial. As I construe that opinion the testimony was ruled inadmissible because it violated the hearsay rule, a ground not included in the objections made at the trial. However, assuming that the point is properly before us, and that the admission of the evidence was error, I would not reverse the judgment and order a new trial because I do not think any prejudice resulted from the testimony in question.

In this case, although defendant contends that he is innocent and that Mr. Gaston erred in identifying him, there is no controversy about the fact that he did identify him as one of the burglars on the two occasions mentioned above. Therefore, the testimony of Officer Smith concerning the fact that Gaston identified defendant on those occasions is merely cumulative of facts established by the undisputed testimony of Mr. Gaston. It has long been an established rule that the admission of improper evidence is harmless where the fact thereby sought to be shown is otherwise fully and properly proved. An examination of the Digest will disclose hundreds of cases that have followed that rule. See Mo. Digest, Criminal Law ☞1169(2), and Appeal and Error, ☞1051(1). A situation somewhat like the one before us existed in State v. Johnson, Mo.Sup., 252 S.W. 623, 625. In ruling the point this court stated, "It is contended that a police officer's statements on the witness stand as to what the witness Jackson had told him concerning his testimony was error, as constituting mere hearsay. Jackson himself testified to the same facts, and while the admission of the officer's testimony was technically improper, the same facts having been elicited by other and competent testimony, the appellant was not thereby prejudiced." Of similar import is State v. Burns, Mo.Sup., 280 S.W.2d 119, wherein Police Officer Livingston had testified that he had been present on two identifica-

tions. In disposing of contentions of error in that regard the court said, "prior to witness Livingston taking the stand, witnesses who were at the scene of the robbery were examined and cross-examined respecting their identification of defendant after his arrest in a 'show up' room. In the circumstances the witness's answer that he was present at two identifications did not add to the State's case, was not prejudicial and did not constitute reversible error." State v. Burns, Mo.Sup., 280 S.W.2d l. c. 122.

The principal opinion states that the rule above discussed should not be followed in this case because such would have the effect of nullifying the evidentiary rule it applies. With that I do not agree. The rule I have stated is a *general* rule and should be invoked in every situation where applicable. The case before us is a classic example of non-prejudicial error. It is an elementary rule, to which there is no exception, that no case should be reversed unless there is shown to have been prejudicial error. The principal opinion states that the question of lack of prejudice, by reason of the cumulative nature of the testimony, should not be considered. That ruling will have the effect of inferentially overruling most, if not all, of the cases following the rule I have discussed above and will greatly impair the administration of justice in this State in both civil and criminal cases.

The principal opinion relies primarily on State v. Fleming, 354 Mo. 31, 188 S.W.2d 12, in support of its ruling. There is no conflict between that opinion and the views I have expressed because that case did not consider the question as to whether the error was non-prejudicial because of the cumulative nature of the testimony complained of. Moreover, Fleming is somewhat distinguishable because in that case the father of prosecutrix and the police officers were permitted to recite a rather lengthy narrative given by prosecutrix when she made complaint concerning the offense.

As indicated, I would affirm the judgment in this case.

FINCH, Chief Justice (concurring).

I concur in the principal opinion but have concluded it is desirable to file this explanatory statement:

Judge HOLMAN's dissenting opinion concludes that the principal opinion inferentially overrules most or all of the Missouri cases holding that the admission of cumulative evidence is harmless where the fact thereby sought to be proved is fully and properly proved by other testimony. I do not believe it is subject to that construction. Actually, it recognizes that the admission of cumulative evidence may in some cases be harmless error and then finds that Officer Smith's testimony was not harmless. In so ruling, the opinion, as I understand it, states that the fact that evidence is cumulative does not automatically make its admission harmless. I agree with that viewpoint. Actually, each case must be examined to determine whether the particular cumulative evidence admitted therein was harmless and hence not prejudicial, even though erroneous.

If we were dealing with a situation wherein several eyewitnesses had positively identified the defendant as a participant in the burglary and the state had offered Officer Smith to confirm that Mr. Gaston had identified photographs of defendant and had picked him out in a lineup, we might well conclude that such evidence, even though erroneously admitted, did not operate to the prejudice of defendant and was harmless. Here, however, we have a case wherein Mr. Gaston, who was 78 years of age, was the sole person who identified defendant as being one of the men who was seen removing furniture from the Hasler home. Defendant took the stand and denied being at the Hasler home or participating in the burglary. Under these circumstances, the testimony of Officer Smith may well have been the deciding factor in the jury's verdict. We cannot be

sure about that, of course, but we cannot conclude and declare that as a matter of law the admission of his testimony was harmless error.

Technically, Officer Smith's testimony was cumulative in the sense that it was additional to that of Mr. Gaston. It was not cumulative in the sense that it was additional to other testimony which fully proved that defendant was one of the men who participated in the burglary. According to 25 C.J.S. p. 34, "cumulative" comes from the Latin word "cumulo" meaning "to heap," or "cumulus" meaning "a heap." The testimony of Officer Smith was not the piling on or addition of testimony to a substantial heap or body of testimony of other witnesses clearly establishing that defendant was present and participated in the burglary. In this one versus one situation, I cannot conclude that the testimony of Officer Smith was harmless cumulative evidence.