**STATE of Missouri, Respondent,**

v.

**Arthur Lee COOK, Appellant.**

No. 62755.

Supreme Court of Missouri,
En Banc.

March 9, 1982.

Clifford A. Cohen, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

BARDGETT, Judge.

Appellant was convicted of first-degree robbery in a jury trial and sentenced to twelve years' imprisonment. The Missouri Court of Appeals, Western District, affirmed, and on application of appellant this Court transferred the cause here. Portions of the court of appeals opinion will be utilized without quotation marks.

The issue presented is whether the trial court erred in overruling appellant's objection to the hearsay testimony of a police officer that two other witnesses identified photos of appellant as the robber under *State v. Degraffenreid,* 477 S.W.2d 57 (Mo. banc 1972), and, if so, whether the error was not prejudicial.

The facts are as follows: On February 13, 1979, two women were working as tellers at the drive-in facility of the Merchants Bank in Kansas City, Missouri. At approximately 3:00 p. m., a man, masked by nylon hose, walked up to the drive-in window. When he asked for change for a five-dollar bill, one teller extended the customer drawer. After returning the drawer, the teller saw that it contained a paper sack. The man, while waving a gun, told the teller to put five-thousand dollars in twenties into the sack. The teller did so.

The two women tellers gave detailed descriptions of the robber and picked out appellant's picture from a group of five displayed to them by the police. Appellant was apprehended and given appropriate *Miranda* warnings. He denied committing the robbery. After the initial denial, the interrogating officer told appellant that two witnesses had identified his photograph and thereafter appellant confessed.

At trial, the two tellers identified appellant as the robber and appellant's signed, written confession was introduced. Prior to the introduction of the confession, but after the tellers had testified, the interrogating officer related the circumstances surrounding appellant's confession which included the following:

Q. And what is that?

A. This is a statement that was taken from Arthur Cook at the conclusion of the interview.

Q. At the conclusion of the interview. Would you explain to us how the interview is conducted and how a statement would be generated at the conclusion of an interview?

A. After Mr. Cook signed the *Miranda* Warning Waiver, I asked him several preliminary questions.

Q. And what would preliminary questions consist of?

A. I advised him that—I asked him first if he knew what he was arrested for, stated that he understood he was arrested for robbery. I informed him that he was arrested in connection with the robbery at the Merchant's Bank, asked him if he had anything to say about it. He advised me that he didn't have anything to do with the robbery, denied any involvement in it, and I advised him that I had shown his photograph—

MR. COLANTUONO: Excuse me. May we approach the bench?

Defense attorney knew what was coming and objected to the officer testifying that two witnesses—the tellers—had identified appellant's photograph because such testimony was irrelevant, immaterial, and unresponsive to the question and hearsay. Following a discussion at the bench, during which the prosecutor contended he was en-

titled to introduce the statement made by the officer to the appellant in order to explain why appellant, after denying participation in the robbery, confessed, the objections were overruled. The prosecutor was then permitted to ask and the witness to answer as follows:

Q. I believe we were at the point where you were explaining to us during the course of the questioning how the questioning was proceeding. Can you tell us, please, what you told to the defendant at this point? You mentioned he had previously denied involvement in the robbery?

A. After he denied any involvement in the robbery, I advised him that we had received information, and he was involved in the robbery, and that his picture had been picked out by the two witnesses as a suspect who had committed the robbery.

Appellant contends that the statement in this case is exactly like the one in *Degraffenreid*—it is hearsay. And even if the testimony is not hearsay, its admission committed the evil *Degraffenreid* sought to abolish—corroboration of a witness's extrajudicial identification before that witness is impeached as to that particular extrajudicial identification.

The state contends the testimony was admissible and not proscribed by *Degraffenreid* because it was not offered to prove the truth of the matter (not offered to prove the two tellers did, in fact, identify the appellant's photo), but only to show that the statement was made by the officer (whether true or false) in order to show the state of mind of the appellant and consequently why appellant confessed (appellant's belief, induced by the officer's statement, that two people identified him as the robber and therefore he would be found guilty).

In *State v. Degraffenreid, supra,* a police officer testified that the eyewitness—Gaston—identified the defendant's photo the day after the burglary as the person who committed the burglary and also that Gaston identified the defendant as the culprit by selecting him out of a lineup. That testimony was held to be hearsay. This Court stated:

There is no substantial difference between the third person attesting that the identifying witness *told* the third person that "John Doe did it," or the third person attesting that the identifying witness *pointed* to John Doe's photograph or to John Doe in a lineup as being the culprit, or, on the other hand, to a third person testifying that John Doe told him he was not present at the scene and did not commit the alleged offense. Such testimony is wholly lacking in probative value when the principal issue is whether the accused in court is the same person the identifying witness saw commit the crime and *not* whether the accused in court is the same person previously identified by the identifying witness in a lineup or by photograph.

*Id.* at 63–64.

In *Degraffenreid,* it was pointed out that to excuse the error because the evidence was cumulative would simply permit a party, the state, to provide itself with witnesses by the mere expedient of having one or more officers or others present at the various times the identifying witnesses pointed out the accused.

The effort by the state to justify the admission of such evidence here on the proffered basis that it goes to the state of mind of the appellant in that it tends to explain why he confessed so as to buttress the credibility of the confession comes under the same criticism as did the "cumulative" excuse in *Degraffenreid.* The evidence of extrajudicial identification by others would always be admissible on the proffered basis. All that would be required is that the officers *said* it to the prisoner prior to a confession. The damage is done whether the hearsay be true or false. One might say that a defendant's state of mind at the time he gives a confession is always important as it relates to voluntariness. That umbrella, however, cannot be allowed to become the excuse to get into evidence hearsay testimony which is otherwise inad-

missible. The predictable prejudicial effect far outweighs the supposed relevancy of the evidence to an accused's state of mind. The fact is that there was no issue in this case for the jury regarding the appellant's motivation for confessing, and the state cannot make up an issue for the purpose of providing a basis for the admission of the hearsay.

When a real factual issue for the jury occurs, then evidence otherwise inadmissible may become admissible. As was pointed out in *Degraffenreid*:

> This is not to say that when, during the course of a trial, issues are created by impeachment of the identifying witness's testimony with respect to whether or not the witness identified the defendant in a lineup or by photographs that the testimony of those present at such extrajudicial identification is not admissible. It is admissible. *State v. Ransom*, 340 Mo. 165, 100 S.W.2d 294; *State v. Simmons*, Mo., 39 S.W.2d 774.

*Id.* 477 S.W.2d at 64.

*State v. Herington*, 520 S.W.2d 697 (Mo. App.1975), relied on by the state is inapposite. There the defendant was charged with obtaining money by false pretenses and the victim was permitted to testify as to the instructions a phone caller gave to the victim to withdraw money from a bank account and do certain things with it in order that an alleged dishonest teller could be found out. It was part and parcel of the "confidence game" the caller was perpetrating on the elderly victim and was material and relevant to the essential elements of the state's primary case. The same distinction applies as to *State v. Stufflebean*, 604 S.W.2d 737 (Mo.App.1980). That is not the case here.

The opinion concurring in result cites *State v. Harris*, 620 S.W.2d 349 (Mo. banc 1981); *State v. Brooks*, 618 S.W.2d 22 (Mo. banc 1981); *State v. Giannini*, 606 S.W.2d 780 (Mo.App.1980); and *State v. Dobson*, 587 S.W.2d 620 (Mo.App.1979). These cases are distinguishable from the case at bar.

In *Harris, Brooks*, and *Giannini*, the testimony was offered to explain the subsequent conduct of the *witness testifying.* It was *not* the *statement* of the *testifying witness*, as here, that was admitted but rather what *someone else* said or did that, arguably, was relied upon *by the testifying witness* and acted upon by that witness. In this case the testifying witness, the interrogating officer, related what he, the testifying officer, told the defendant. He, testifying officer, told the defendant that two people had identified him (defendant) as the culprit. It is obvious that this statement made *by the officer* was not relied *on by the officer* in taking subsequent action.

Specifically, in *Harris*, the *victim testified* that she, the *victim*, was told that the defendant would rape her, the *victim.* This was offered by the victim as the reason why she, the victim witness, appeared to acquiesce in the sexual intercourse. The testimony was not offered to explain someone else's subsequent conduct but rather to explain or justify why she, the victim, did not resist further.

In *Brooks*, the *officers's* testimony was that they, officers, had been informed that the defendant was selling drugs at a particular place and was offered to explain the witnesses's (officers's) subsequent conduct in going to that particular place.

In *Giannini*, the officer testified he (officer) went to a particular place *because* he was told by one Leonard that the defendant was the person who was with him. Again, the listener witness (officer) was permitted to state what another person said to him as explanatory of what the officer did thereafter. No application for transfer was filed in *Giannini*.

In *Dobson*, the defendant contended his confession was improperly admitted because the police had not advised him of his rights (*Miranda* warnings). An officer, McDonough, was permitted to testify that he (McDonough) and officer Wilson interrogated the defendant and that Wilson had "given defendant his rights." Wilson did not testify. *Miranda* warnings are abstract propositions of law—rights—that do not convey any information about the offense

or any participant. Saying that Wilson "gave defendant his rights" is the same as saying that Wilson gave a person a card with *Miranda* warnings on it. There simply is no falsity or truth to that which has become "canned" as a statement of rights. It is like an *event* that took place rather than testimony repeating what another said where the truth or falsity depends upon the credibility of the person not in court. *Dobson* is simply inapposite. To "give him (accused; defendant) his rights" has become a term of art that describes an event that satisfies the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to interrogating the accused. It may or may not mean all of that to citizen jurors, but it does mean something to judges and lawyers. As the court of appeals says in *Dobson*, the statement that Wilson "gave defendant his rights" meant Wilson had, in fact, "warned the defendant."

In the instant case the officer witness was not relating anything upon which the officer relied as an explanation of why the officer did anything. He simply told the defendant two witnesses had identified him as the culprit. The concurring opinion seems to justify this as evidence of voluntariness of the confession given by the defendant.

It is, of course, true that a statement by a witness as to what he (witness) did out of court is not hearsay, although it may be objectionable on other grounds. Similarly, what a witness testifies he (witness) said to another is not necessarily hearsay—unless it includes what a third person said, such as here—but that does not make the statement admissible either.

In each of the first three cases cited in the concurring in result opinion, as acknowledged in that opinion, the out-of-court statement by a third person to the testifying officer (listener) was admitted to explain the conduct of the listener—testifying officer. In the instant case, the testifying officer is the "listener" but the words of the officer are not offered to explain *his* conduct.

Thus, the essential basis for admitting the hearsay in *Harris, Brooks*, and *Giannini, supra*, is absent here—this was not offered to explain the subsequent conduct of the testifying witness (officer). Whether the hearsay recitation motivated the defendant to confess is highly speculative at best. In general, the prejudice to a defendant resulting from an officer, or other person, repeating what alleged eyewitnesses had to say about a defendant's complicity outweighs the highly speculative concept that the officer's statement may have motivated the defendant to confess.

The testimony complained of was hearsay and not admissible, and the court erred in overruling the appellant's objection.

Although "error in the admission of evidence should not be declared harmless unless it is so without question ..., error which in a close case might call for a reversal may be disregarded as harmless when the evidence of guilt is strong." *State v. Degraffenreid, supra*, 477 S.W.2d at 64–65. In the instant case, there was overwhelming evidence of guilt. Two witnesses positively identified appellant as the robber and appellant's signed confession, uncontested by him, was introduced into evidence. There was no suggestion that the witnesses were mistaken, that appellant's confession was untrue or involuntary, or that appellant was not the robber. Moreover, the interrogating officer's contested testimony was the only reference contained in the record of the extrajudicial identification by the witnesses which the jury heard. The record is devoid of any hint that the state improperly emphasized the testimony. Therefore, it cannot be said that the evidence influenced the jury or "tip[ped] the scales against defendant." *Id.* at 64. Consideration of the trial transcript shows that appellant's attorney relied heavily on the mitigating aspects of appellant's confession in an effort to persuade the jury to not give a severe sentence. In this he was successful, as the minimum sentence for the crime is ten years' imprisonment and the jury assessed punishment at twelve years. It is clear to this Court that the inadmissible

testimony was insignificant *in this case* with regard to the determination of guilt.

The error was harmless. Judgment affirmed.

MORGAN and HIGGINS, JJ., concur.

SEILER, J., concurs in separate opinion filed.

RENDLEN, J., concurs in result in separate opinion filed.

WELLIVER, J., concurs in result and concurs in separate opinion of RENDLEN, J.

DONNELLY, C. J., dissents in separate opinion filed.

SEILER, Judge, concurring. ·

For the reasons stated in Judge Bardgett's opinion I agree that it was error to admit the testimony in question of the police officer, but I agree with Judge Donnelly that the "harmless error rule" of *State v. Degraffenreid*, 477 S.W.2d 57, 64 (Mo. banc 1972) is flawed and that we should follow the rule that the presumption that error is harmless is overcome only if we are able to declare that belief beyond a reasonable doubt. However, in the case before us, there is no genuine argument but that the defendant did hold up the bank and what the police officer testified to went only to the identity of the defendant as the hold-up man. Therefore, on the facts of this case, we can say with confidence that the error is harmless beyond a reasonable doubt and the conviction should be affirmed.

RENDLEN, Judge, concurring in result.

While I concur in the majority's affirmance of the trial court's judgment, I cannot agree with the majority's conclusion that "the testimony complained of was *hearsay* and not admissible, and the court erred in overruling the appellant's objection." (Emphasis added). (*See* p. 661).

Under the circumstances here, *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972), is inapposite. In the case at bar a police officer's custodial interrogation of appellant led to appellant's confession. During that interrogation the officer made certain "utterances" to appellant. When called to testify in this cause, the police officer was asked to relate the circumstances surrounding appellant's confession, which would include the "utterances" the officer had made to appellant before he confessed. The police officer testified as follows:

> After he [appellant] denied any involvement in the robbery, I advised him that we had received information, and he was involved in the robbery, and that his picture had been picked out by the two witnesses as a suspect who had committed the robbery.

The officer's testimony was not hearsay. An analysis of the character of such testimony demonstrating it to be other than hearsay is succinctly set forth in 31A C.J.S. *Evidence* § 193 (1964) as follows:

> Testimony by a witness as to a matter within his knowledge is not hearsay; a statement in court by a witness, not of what someone else did or said out of court, but of what he himself did, is not hearsay testimony. The hearsay rule applies only where out-of-court, or extra-judicial, utterances are offered to prove the truth of the matter asserted therein, and not where they are offered for some other purpose. (Footnotes omitted).

The majority overlooks well established law that the key question in hearsay analysis is whether the out-of-court declaration is being offered for the truth or falsity of the matters therein asserted. As stated in 29 Am.Jur.2d *Evidence* § 497 (1967),

> The hearsay rule, however, does not operate, even apart from its exceptions, to render inadmissible every statement repeated by a witness as made by another person. It does not exclude evidence offered to prove the fact that a statement was made or a conversation was had, rather than the truth of what was said. (Footnotes omitted).

More precisely,

> Wherever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the ut-

terance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned. 6 Wigmore, *Evidence* § 1789 (Chadbourn rev. 1976).

As an example in point under the subheading *Utterances and writings offered to show effect on hearer or reader*, McCormick notes:

> When it is proved that D made a statement to X, with the purpose of showing the probable state of mind thereby induced in X, such as being put on notice or having knowledge, or motive, or to show the information which X had as bearing on the reasonableness or good faith of the subsequent conduct of X, or anxiety, the evidence is not subject to attack as hearsay. (Footnotes omitted). *McCormick on Evidence* § 249 at 589–90 (2d ed. 1977).

These utterances in the case at bar were not offered to prove the truth of the matters therein asserted, i.e. that two witnesses had identified appellant as being involved in the robbery, but rather to accurately show what was uttered and reveal what prompted appellant to confess. Accordingly, the offered utterances show the motivation for the listener's subsequent actions and do not fall within the proscriptions of the hearsay rule. For example, the officer might have uttered to appellant, "John Doe said he would shoot you if you don't confess," when John Doe made no such statement. If later during testimony the officer relates what he "uttered", that testimony would not be to prove John Doe did say he would shoot appellant, but instead, to show what the utterance was and how it might have effected the confession. The testimony would be admissible.

The principal opinion confuses the law surrounding hearsay by misdefining the term. Rather than a situation akin to *State v. Degraffenreid, supra*, where the complained of testimony was clearly proffered and relevant only for its truth, the circumstances in the case at bar are more analogous to several recent decisions finding similar utterances not hearsay.

In *State v. Harris*, 620 S.W.2d 349, 355 (Mo. banc 1981), the victim's testimony that a friend had stated "He'll [the defendant] rape you" was determined not to be hearsay, as the statement was offered not for its truth, but to show its effect on the victim (the motivation for her subsequent actions in appearing to acquiese to the rape).

In *State v. Brooks*, 618 S.W.2d 22, 25 (Mo. banc 1981), this Court concluded the officer's testimony that an informant stated the defendant was selling drugs was admissible to explain the officer's (listener's) subsequent conduct in investigating the defendant. The testimony was not hearsay in that it was not offered to prove that defendant was in fact selling drugs.

An officer's testimony that a person apprehended had identified the defendant as his accomplice was found *not* to be hearsay in *State v. Giannini*, 606 S.W.2d 780, 781 (Mo.App.1980). Again, the statement was offered to show its effect on the listener (officer) to explain his subsequent conduct, not for the fact the defendant was the accomplice.

Though the majority, in its efforts to reshape the law surrounding application of the hearsay rule, explains that the above "cases are distinguishable" in that "the testimony was offered to explain the subsequent conduct of the *witness testifying*" (p. 660), the majority slights several cases revealing that such a distinction is without validity or merit. In *State v. Hale*, 371 S.W.2d 249 (Mo.1963), a corporal testified that a sergeant told the defendant that the defendant's version of the shooting could not be true because the victim was shot from the back. The corporal's testimony was held not to be hearsay because it was offered not as evidence of the fact asserted, but rather to establish that the statement was made by the sergeant. The defendant-listener, on whom the statement was intended to have an effect, was not the witness testifying.

In *State v. Healey*, 562 S.W.2d 118 (Mo. App.1978), an officer testified that he told the defendant's girl friend that the defend-

ant was in jail and therefore could not harm her. By this, the officer had sought to persuade her to let him in the house to see the victim (a child who had been abused by the defendant). The officer's testimony was not hearsay because it was offered to show that the statement had been made and for its effect on the woman, who was not the testifying witness to this statement.

Testimony by an officer that his partner told the defendant that the officer was interested in purchasing marijuana from the defendant was held not hearsay in *State v. Gardner*, 558 S.W.2d 395 (Mo.App.1977). No testimonial or assertive use was sought to be made of the utterance. Instead, it was offered to prove the state of mind which ensued in another person, in that it provoked a reply by the defendant (in the form of an admission that he was willing to sell marijuana) and explained the testifying officer's subsequent activities. Again, the defendant-listener, from whom the statement was intended to motivate a response, was not the testifying witness as to the partner's statement. *See also, State v. Kern*, 447 S.W.2d 571 (Mo.1969); *State v. Singh*, 586 S.W.2d 410 (Mo.App.1979).

In my example above, the officer's testimony that he told the accused John Doe had threatened to kill the accused unless he confessed, would clearly be admissible for the fact that the statement was made, i.e., to show the state of mind which ensued in the defendant-listener (who need not be testifying). Hinging admissibility on the

fact that the statement is offered to explain the subsequent conduct of the testifying witness misstates the law and mocks precedent.

Finally, in *State v. Dobson*, 587 S.W.2d 620, 621 (Mo.App.1979), an officer was properly permitted to testify that the police sergeant had *advised* the defendant of "his rights". The testimony was offered not to prove the inherent truth of the sergeant's statement, but rather to show that the sergeant had warned the defendant. In other words, the nonjudicial declaration was relevant for the fact it was made (i.e., to show the state of mind which ensued in the accused, that he need not talk with the officers unless he wished), not for the truth or falsity of the utterances (i.e., that statements made by the accused would in fact be used in court against him, that the accused could in fact refuse to make a statement, etc.).[1] Hence, the statement was not hearsay.

The officer's utterances *sub judice* clearly were offered for their effect on the listener (appellant), i.e. to explain his subsequent conduct in making the confession.[2] The statements were relevant to the voluntariness of appellant's confession which, notwithstanding the majority's assertions, is always an issue in a criminal case where the accused has confessed. Hence, as stated above, the statements were not offered for the truth of the matters therein asserted, and accordingly, were not hearsay nor inadmissible as such. As there was no error, a review for prejudice is inappropriate.

---

1. While the majority characterizes the giving of *Miranda* rights as "an *event* that took place rather than testimony repeating what another said where the truth or falsity depends upon the credibility of the person not in court" (p. 661), it must be remembered that events *may* rise to the level of hearsay when conduct expressed is assertive in nature. *McCormick on Evidence* § 250 (2nd ed. 1977). *See, State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972). Again, the operative question in hearsay analysis turns on the genuine purpose for which admission of testimony is sought, not on characterization of the testimony as a statement, vis-a-vis conduct.

2. The majority contends it is "highly speculative" that the challenged statement motivated defendant to confess. (p. 661). This I

doubt, as, according to the officer's sworn testimony, defendant first denied involvement then admitted complicity when advised that the police possessed evidence incriminating him. Nevertheless, if it were "highly speculative" that the statement produced its intended effect on the accused, the proper objection would be irrelevance, not hearsay. In general, the true thrust of the majority's complaint about the officer's testimony seems to be that its prejudice to the defendant outweighed its probative value in explaining the defendant's confession. This raises a question of relevancy, i.e. the probative value of the testimony as against possible prejudice to be measured under the evidentiary rules concerning relevance not hearsay. (*See* p. 661).

DONNELLY, Chief Justice, dissenting.

I doubt that the testimony complained of was hearsay. *See* 6 Wigmore, *Evidence*, § 1789 (Chadbourn Rev. 1976); McCormick, *McCormick on Evidence*, § 249 (2d Ed. 1972).

However, in any event, I have come to believe that the "harmless error rule" articulated in *State v. Degraffenreid*, 477 S.W.2d 57, 64 (Mo. banc 1972) is flawed, and should no longer be followed.

In 1903, Division No. 2 of this Court said: "Error is presumptively harmful, and it devolves upon the party who commits it to show that it could not possibly have resulted in injury. Especially is this true where the life or liberty of the citizen is at stake. * * *." *State v. Shipley*, 174 Mo. 512, 516, 74 S.W. 612, 613 (1903).

In my view, this presumption may be overcome only if we are "able to declare a belief that * * * the error * * * was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

I respectfully dissent.