## SOUTHERN UNDERWRITERS v. STUBBLEFIELD.

### No. 4784.

Court of Civil Appeals of Texas. Amarillo.

July 10, 1937.

Lightfoot, Robertson, Saunders & Gano and Claude Williams, all of Fort Worth, for plaintiff in error.

Smoot & Smoot, of Wichita Falls, for defendant in error.

FOLLEY, Justice.

This action arose under the Workmen's Compensation Act (Rev.St.1925, arts. 8306 –8309 [Vernon's Ann.Civ.St. art. 8306 et seq.]). The Southern Underwriters, the plaintiff in error, was the plaintiff in the trial court. John W. Stubblefield, defendant in error, was the defendant in the trial court. We shall designate the parties as they were known in the trial court.

From an award made by the Industrial Accident Board, the plaintiff appealed to the district court of Wilbarger county, Tex. The defendant filed his cross-action alleging injuries to his back, shoulder, head, and jaw. He alleged and proved that the injuries occurred in the course of his employment as a driller in the ·oil fields. He alleged, and offered evidence tending to prove, such injuries were of a permanent nature and totally incapacitated him. In answer to this plea of defendant the plaintiff filed a general demurrer and general denial.

In special issue No. 4 the trial court submitted an issue asking the jury if the defendant was totally disabled. In special issue No. 6 he submitted the issue as to whether said total disability was permanent conditional upon an affirmative finding on special issue No. 4. The jury answered each of these issues affirmatively. Immediately following special issue No. 6 was the following language: "If you have answered the foregoing special issues to the effect that the defendant Stubblefield was not permanently disabled by the injuries received by him, if any, and only in that event, you will answer the following special issues Nos. 7 and 8." Special issue No. 7 asked the jury if the defendant was partially disabled. Conditioned further on an affirmative answer to issue No. 7, special issue No. 8 inquired as to the percentage of partial disability. Conditioned on an affirmative answer to special issue No. 7, the court·submitted issues Nos. 15 and 16. No. 15 inquired as to the number of weeks of partial disability, and No. 16 as to whether said partial disability was permanent. Conditioned on a negative answer to special issue No. 6, the court submitted special issue No. 17, which inquired as to the number of weeks of total disability. Under the above instructions from the court, special issues Nos. 7, 8, 15, 16, and 17 were not answered by the jury. Upon the finding of the jury that the alleged injuries were total and permanent the court rendered judgment for the defendant. From this judgment the plaintiff appeals.

Plaintiff's first, second, and third propositions complain of the trial court's failure to submit to the jury affirmatively and unconditionally, for the benefit of the plaintiff, the issues of partial incapacity, temporary partial incapacity, permanent partial incapacity, percentage of partial disability, and temporary total disability. Since ·all three of these assignments relate to the same subject-matter, we shall discuss them together.

The court nowhere in his charge submitted any of the foregoing issues for the insurance company except upon the condition as above set out that the jury must first find against the contention of the defendant in each instance before being allowed to consider the defensive issues of the plaintiff. The court evidently assumed that a finding of total incapacity excluded

any contention of partial incapacity. He doubtless was of the further opinion that a finding that the injuries were permanent excluded plaintiff's theory that the same were temporary. This court has heretofore held in Texas Employers' Ins. Ass'n v. Horn, 75 S.W.(2d) 301, that the failure to submit affirmatively defensive issues was error. In that case, Justice Jackson reviewed the authorities on the subject and further held that the insurance company had the right, under a general denial, to have an affirmative submission of its defensive issues of partial incapacity as opposed to total incapacity, citing Indemnity Ins. Co. of North America v. Boland (Tex. Civ.App.) 31 S.W.(2d) 518, and many other authorities. This same question was extensively discussed and similarly decided by Justice Jackson again in the case of Traders & General Ins. Co. v. Patton (Tex. Civ.App.) 92 S.W.(2d) 1083, 1085 (writ dismissed), citing many authorities in support of this proposition. From the opinion in the latter case we quote: "The fact that the jury found that the appellee had been totally and permanently disabled does not authorize the presumption · that they would have found against appellant on partial incapacity. Indemnity Ins. Co. of North America v. Boland, supra."

In Copeland v. Brannon (Tex.Civ.App.) 70 S.W.(2d) 660, 662 (writ dismissed), it is said: "There was no finding of the jury on some of the material questions presented, and, having submitted these issues to the jury, and the jury not having found on them, the court was not authorized to supply such findings, nor to render judgment on the issues answered, but should have refused to accept same; and the jury should have been returned for further consideration, and, in case they could not agree on such material issues, a mistrial should have been declared. The court had no authority to render judgment on the verdict, absent any finding on a material issue submitted." Citing authorities.

The Commission of Appeals, Section B, in a very recent opinion by Judge Martin of the Commission, in answer to a certified question on this same subject in the case of Texas Indemnity Ins. Co. v. Nelson Thibodeaux, 106 S.W.(2d) 268 (not yet published [in State report]), held that the insurance company was entitled to an affirmative submission of all defensive issues raised by the pleadings and the evidence. The opinion in that case was adopted by the Supreme Court June 23, 1937. So far

as we have been able to ascertain that holding is the first time the Supreme Court of Texas has affirmatively spoken on this question in workmen's compensation cases.

■ From the above decisions we think it is obvious that the plaintiff in this case was entitled to have its defensive issues submitted affirmatively and unconditionally provided the evidence raises such issues. Therefore, all that remains for us to determine in this case is whether or not the testimony presented such defenses.

The defendant testified he was injured in his back, shoulder, and jaw. The defendant was working on an oil rig cleaning out a well at the time of the accident. His work was that of a driller. The "clutch lever" on the rig was jerked from defendant's hands and hit him while it was traveling so fast the eye could not follow it. This lever struck the defendant on the jaw knocking him down and then hit him on the back and shoulder as he attempted to get up. His teeth were knocked out, his lower jaw broken, and upper jaw fractured. He was carried to a hospital where he remained about two months. He was examined by several doctors, but only two of them testified in the case, and they by deposition. Dr. Q. B. Lee and Dr. Duane Meredith of Wichita Falls, Tex., substantiated the testimony of the defendant with reference to injuries to the jaw. Dr. Lee testified that the defendant did not complain to him about any injuries to his back and shoulder but only complained about his jaw. He only examined him one time. Dr. Meredith testified that the first time he examined the defendant he mentioned only the jaw injuries. In his second and third examinations the defendant did mention back and shoulder injuries, but Dr. Meredith said he did not think his back and shoulder were injured. In his opinion the only abnormality the defendant had at any of the times he examined him was in the jaw. Both doctors testified that the lower jaw was fractured and was so deformed that there was a lack of union and said an operation would be necessary to produce articulation with the upper jaw. In the condition of defendant's mouth he could not masticate his food. Dr. Meredith was of the opinion that unless an operation was performed the defendant could never wear a lower false plate, and that in his then condition the defendant could eat only soft foods and soup. He further stated that on his last examination the defendant appeared weak and emaciated and

had lost about twenty-five pounds in weight due to his being unable to eat solid foods.

It was undisputed that the defendant had followed the oil field work all of his mature life. He was thirty-eight years old, uneducated, and had no other trade except that of a driller. He had worked in the oil fields since 1914. The defendant said he had been unable to eat meats or other solid foods since his injuries, and that he was not strong enough to do heavy work.

On the question of partial disability and the permanency of defendant's injuries, we quote from the testimony of Dr. Meredith, as follows:

"Q. State whether or not the physical condition of defendant, John W. Stubblefield, as you have above described in your preceding answers is likely to be permanent. A. His condition will improve little, if any, unless he has an operation of the lower jaw, and the chiseling off of a piece of bone from the upper left jaw so he can be fitted with proper teeth, when he can masticate proper food, and his chances to get a union of the lower jaw by an operation is about fifty-fifty." (S. F. 57).

"The same witness testified on cross-examination as follows:

"Q. Doctor, it is your opinion that Mr. Stubblefield, at the time you examined him, could do light work, couldn't he? A. Yes, he may have been able to do light work if equipped educationally to do so, but being an oil field driller, he could not do oil field drilling in his condition at the times I examined him.

"Q. It was your opinion, wasn't it, at the time you examined Mr. Stubblefield, that he could do any kind of work other than that which required hard manual labor? A. He could not do work requiring hard manual labor.

"Q. Doctor, if Mr. Stubblefield was educated and otherwise mentally qualified, he could do various kinds of work, couldn't he? A. Yes, if educated to do so and mentally qualified Mr. Stubblefield might do some kind of office work if it required no heavy physical exertion.

"Q. Doctor, if I understand your position, it is your opinion that Mr. Stubblefield could do any kind of work if he were otherwise qualified than that which required a large amount of strength, isn't it? A. He could do light work if equipped, provided only light physical exertion required."

From a statement of the testimony above and from the testimony as a whole, we are of the opinion that the question of partial disability was so sufficiently raised that the issues thereon should have been submitted affirmatively and unconditionally as a defensive matter in behalf of the plaintiff. The court below evidently thought there was some testimony raising these issues for they were submitted in behalf of the defendant. Of course, a submission of these issues would not be conclusive that the testimony raised them, and we do not so hold, but the court below gave the defendant the benefit of the doubt in this respect. We think that before the court can omit to submit such defensive issues unconditionally in behalf of the plaintiff in this case that the testimony must not only fail to raise these defensive issues but it must exclude them. Certainly it cannot be said that the testimony excludes all theories of partial disability, when we take into consideration that the most accepted definition of partial disability is anything less than total. It may be that the term "partial disability" conveys to the average mind the conception of a small or nominal disability, but this is not true. A 95 or a 99 percentage of disability is just as "partial" within the definition as 5 or 10 per cent. The degree of partial disability has nothing to do with making the disability partial. If the jury had found against the defendant on total disability and for him on partial disability, certainly the defendant would be in this court contending that the testimony supported the verdict, and this more especially would have been true if the jury had found a 95 per cent. disability.

The only uncontradicted testimony as to the injuries was in reference to the jaw of the defendant. The doctors do not corroborate him in regard to the alleged injuries to his back and shoulder, and Dr. Meredith stated, in his opinion, there was nothing wrong with his back and shoulder. That leaves the injuries to the jaw the sole uncontradicted theory of total and permanent disabilities. The basis for the totality and permanency of these injuries is not really the injury to the jaw itself, but the lack of facilities to eat solid foods resulting in emaciation of his physical con-

dition. In other words, it is not contended by the defendant that the condition of the jaw within itself has totally incapacitated him, but that the jaw in its condition will not permit him to eat food by which he can regain his strength. Therefore, the recovery of the defendant, according to his theory, and that of Dr. Meredith, depends upon whether or not he can assimulate enough food in his condition to enable him to become strong enough physically to procure and retain employment.

We think such a theory is highly speculative and problematical. Certainly as to the duration of the defendant's incapacity, the testimony of the doctor was merely an opinion based upon his examination of the defendant and his experience as a physician. Such testimony, though worthy of belief and, in the realm of possibility, may be correct, yet it is merely an opinion and is not conclusive. It does not exclude the idea that the system of the defendant might respond more readily to soft foods than the doctor thinks. At least we do not think the opinion of the physician as to the duration of the injuries would have been absolutely binding on the jury if they had been given an opportunity to pass on this duration independently of any other issue. Gulf, C. & S. F. Ry. Co. et al. v. Davis (Tex. Civ.App.) 225 S.W. 773; American Nat. Ins. Co. v. McKellar (Tex.Civ.App.) 295 S.W. 628; National Life & Accident Co. v. Muckelroy et al. (Tex.Civ.App.) 40 S.W. (2d) 1115; Independence Indemnity Co. v. Polk (Tex.Civ.App.) 14 S.W.(2d) 330.

■ The testimony of Dr. Meredith, as above quoted, shows that the defendant could do light work if equipped educationally, provided only light physical exertion was required. The testimony reflects that as a driller he had charge of the rig and the men, and that all the men that worked on the job were under his direction. Evidently he must have had some executive ability. From the whole of defendant's testimony we conclude that he is a man of average intelligence. He said in his testimony that he was uneducated, but the record is silent as to how much schooling, if any, he had had. Certainly he would not be required to learn a new trade, and in his present condition we think he is shown to be unable to do the work of a driller at the present time; but from all the testimony in the record we are inclined to believe there are possibly some jobs that the defendant might be able to perform. Certainly the testimony does not exclude such an idea, nor does it exclude the idea that his disabilities might not be as lasting and permanent as the doctor thinks. We therefore conclude that the court erred in failing to submit the defensive issues of the plaintiff to the jury, and we sustain the assignments.

■ In view of another trial of this case, we desire to discuss briefly some of the other propositions assigned as error. Propositions 4, 5, and 6 complain that coverage was not proved. Since the plaintiff admitted in its pleadings the payment of compensation to the defendant on said injuries, we think such admission was sufficient to prove coverage but for one thing. The defendant testified he had never received any compensation from any insurance company. He evidently meant he never received any compensation except that immediately after the injuries, but the testimony is conflicting with the plea of the plaintiff. We think the safer practice is to prove coverage by the insurance policy or by evidence as convincing.

■ Propositions 10 and 11 complain of the failure of the court to define partial incapacity. We think the court should have defined this term. Texas Employers' Ins. Ass'n v. Brock (Tex.Com.App.) 36 S.W. (2d) 704.

■ Proposition 12 complains of the court's failure to define the phrase "injuries received in the course of employment." We do not think it is necessary to define this term unless the testimony raises some question as to the origin of the injuries. 45 Tex.Jur. 848, and authorities there cited. In this case the only inference that the defendant was not working for Walton, the employer, at the time of the injuries, is from the testimony of the witness W. H. Culver, who testified he was working for Riner & Massie at the time and that the defendant was working on the same job. Since Walton, the employer, and Stubblefield, the defendant employee, both testified that the defendant was working for Walton at the time of the injuries, certainly Culver did not mean that he and the defendant were working for the same employer, since the testimony shows that Walton as employer was engaged in cleaning out some wells for Riner & Massie. We are sure this matter will be clarified on another trial.

Plaintiff's other assignments of error complain of matters which will not necessarily arise in the same way, if at all, upon another trial.

The judgment is reversed and the cause remanded.

STOKES, J., did not sit.