STATE of Missouri,
Plaintiff-Respondent,

v.

John Lee GIBSON, Defendant-Appellant.

No. 40621.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 2, 1982.

Motion for Rehearing and/or Transfer
Denied April 16, 1982.

Application to Transfer Denied
June 14, 1982.

Timothy A. Braun, Circuit Public Defender, St. Charles, Melvin G. Franke, Sp. Asst. Public Defender, Jackson, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Presiding Judge.

Defendant appeals from his convictions of kidnapping, assault and rape of Carol G_____ and from his convictions of kidnapping, rape and sodomy of Mary Jo B_____. For his offenses against Carol G_____, defendant was sentenced to concurrent sentences of two, ten and twenty years, respectively and, for his offenses against Mary Jo B_____, defendant was sentenced to concurrent sentences of two, twenty and twenty years respectively. The two sets of concurrent sentences were to be served consecutively. We affirm.

Defendant raises five points on appeal. Defendant contends the trial court erred (1) in permitting a police officer to testify that Carol and Mary Jo each made a positive identification of defendant; (2) in omitting from the verdict directing instructions the time the crimes were alleged to have occurred; (3) in permitting defendant to be convicted of both an assault and rape of Carol, which subjected defendant to double

jeopardy; (4) in failing to grant a mistrial on the prosecutor's closing argument; and (5) in failing to grant a mistrial after certain jurors saw defendant in handcuffs.

The pertinent facts are briefly stated. On the night of October 11, 1977, Carol G_____ and Mary Jo B_____ were hitchhiking along Woodson Road in St. Louis County, Missouri. Sometime after 7:00 p. m., just after dark, a young man stopped his car and offered the two girls a ride. The young man was later identified as the defendant. The girls got into the car, both sitting in the front seat, with Carol next to defendant. They told defendant where they wanted to go. Shortly thereafter, defendant pulled out a wrench and ordered both girls onto the floor of the car. Mary Jo opened the car door in an apparent attempt to escape. Defendant said "Go ahead. Jump. I'll get the last one good." Fearing for Carol's safety, Mary Jo closed the door. Defendant then locked the car doors and again ordered the girls onto the floor. Defendant raised the wrench, Carol grabbed it and they began to wrestle. During the scuffle, defendant hit Carol and Mary Jo with the wrench. He repeated his order to the girls to get down on the floor. Mary Jo complied but Carol argued that both of them would not fit. Defendant then told Carol to put her head in his lap. She initially refused but then complied when he hit her again with the wrench. When Carol's head was on his lap, defendant said: "You know what to do." She replied: "No way" and sat up. When he asked her why, Carol said she would get sick. Defendant then ordered Mary Jo onto the seat and Carol onto the floor. He ordered Mary Jo to commit fellatio, and, because she feared defendant, she agreed. Mary Jo continued the fellatio until defendant stopped the car. After he stopped the car, defendant told Carol to get undressed. She protested and defendant began to hit her again with the wrench. During the struggle, defendant again told Carol to get undressed "or there [would] be blood." However, defendant's blows had already caused Carol to bleed. Defendant then ordered Carol into the back seat. She complied. They had sexual intercourse. Mary Jo did not leave because she was afraid Carol would be hurt. After his sexual intercourse with Carol, defendant moved to the front seat of the car and had sexual intercourse with Mary Jo. Defendant offered Carol and Mary Jo some marijuana which they accepted because they "didn't know what [defendant] was going to do." Defendant then drove Carol and Mary Jo to the street where Mary Jo's sister lived and let them out of the car. Shortly thereafter, the girls went to the hospital, arriving at about 11:00 p. m. The following day, both Mary Jo and Carol identified defendant from a photographic lineup. Subsequently, they identified defendant's car as the car in which the attacks occurred.

■ Defendant first contends the trial court erred in permitting a police officer, Ken Brockel, to testify that Mary Jo and Carol had identified defendant's photograph from a group of photographs. Defendant asserts this testimony is inadmissible hearsay and, citing *State v. Degraffenreid*, 477 S.W.2d 57 (Mo.banc 1972), argues the admission of this testimony was cumulative and prejudicial. We disagree.

Officer Brockel testified he showed the group of photographs to each girl separately. "There were five photos in all," he stated. "Mary Jo was sitting by the secretary's desk. I walked over and started lying (sic) [the photographs] down one at a time, when I reached No. 3, Mary Jo said that's him." Brockel then stated he showed the photographs to Carol in the same order he had shown them to Mary Jo. When Brockel was asked whether Carol had also selected the third photograph, he replied that she did.[1]

1. At trial, defense counsel objected to Brockel's testimony about Mary Jo's selection of the photo on the ground that it was "proof of an extra-judicial statement." This objection was overruled. Defense counsel failed to object to Brockel's testimony about Carol's selection of the same photo. However, the admission of both parts of Brockel's testimony was asserted as prejudicial error in defendant's motion for a new trial. On appeal, defendant asserts it was

Brockel's testimony that the girls identified the defendant from a photographic lineup is inadmissible hearsay. *State v. Degraffenreid*, 477 S.W.2d 57, 62–63 (Mo.banc 1972).[2] In *Degraffenreid*, the admission of similar corroborating testimony was found to be prejudicial because:

"... the practical effect on a jury of the third person's hearsay corroboration of the identifying witness's testimony concerning extrajudicial identification is to lend substantial credence to the identifying witness's testimony, and such credence is principally derived from the stature and character of the third person rather than the substantive basis for his testimony." *Id.* at 64.

However, in *Degraffenreid*, the sole identification witness was a 78 year old man who viewed the defendant for somewhat "longer than a minute" from a distance of 78–80 feet. Under those circumstances, the officer's corroborating testimony "confirm[ed] the believability of the [witness'] testimony and thereby tip[ped] the scales against defendant." *State v. Degraffenreid, supra* at 64. The facts in the present case are markedly different. In the present case, there were two separate identifications of the defendant rather than a single identification. The two young girls viewed the defendant from very close range for approximately one hour, under circumstances which would sensitize their memory. Unfortunately, these types of crimes give the victim an unparalleled opportunity to view her assailant. Moreover, both girls picked defendant as their assailant from the photographic lineup without hesitation, and

their in-court identification of him was unequivocal. Furthermore, each girl was able to identify defendant's car as the car in which the offenses occurred. Unquestionably, the identifying evidence here was strong and heavily weighted against the defendant. Thus, we cannot say, as the Court said in *Degraffenreid*, that Brockel's hearsay testimony "tip[ped] the scales against defendant." *See State v. Montgomery*, 596 S.W.2d 735, 738 (Mo.App.1980); *State v. Starkey*, 536 S.W.2d 858, 864 (Mo. App.1976).

▪ Defendant next contends the trial court erred in failing to submit the time of day the various offenses occurred in the respective verdict directing instructions.[3] The instruction on rape tracked MAI–CR 6.40. The instruction on sodomy tracked MAI–CR 12.50 and the instruction on kidnapping tracked MAI–CR 6.30. The instruction on alibi tracked MAI–CR 3.22.[4] The time the offenses occurred was referred to in the state's verdict directing instructions as "on or about October 11, 1977." Defendant contends his assertion of an alibi defense required the trial court to define the time the offenses allegedly occurred with greater specificity. We disagree.

The *Notes on Use* appended to MAI–CR 6.40 (rape) state that "if the defendant has an alibi for the particular rape charged, the instruction should submit the date and, if important to the defense, the time of day, e.g., 'between the hours of _____ and _____' ...." MAI–CR 6.40, *Notes on*

---

plain error to admit the unobjected to portion of Brockel's testimony.

**2.** The state distinguishes the *Degraffenreid* case from the present case. In *Degraffenreid*, the state points out, the officer testified that the identifying witness actually identified the defendant from the photographic lineup. Here, the state notes, Brockel merely testified that the girls selected the same photograph and one of the girls said: "That's him", but no explicit or overt connection was made between the photograph selected and the defendant. The state's sensible distinction notwithstanding, for our purposes here, we assume the jury understood Brockel's testimony to mean the girls

actually identified defendant from the photographs. *See State v. Starkey*, 536 S.W.2d 858, 864 (Mo.App.1976).

**3.** In his motion for a new trial, defendant preserved this objection to the instructions on the kidnapping and sodomy of Mary Jo and the rape of Carol. He failed to preserve this objection to the instructions on the kidnapping and assault of Carol and the rape of Mary Jo. He now requests us to consider the latter objections as plain error.

**4.** The case was tried in 1978, at which time MAI–CR were the applicable instructions.

*Use,* Para. 2. Similarly, the *Notes on Use* appended to MAI–CR 12.40 state that "[t]ime may be of the essence and may even require the submission of the time of day." MAI–CR 12.50, *Notes on Use,* Para. 2.[5] Since defendant relied on an alibi defense, the failure to include the time of day the offenses occurred in the instructions is presumptively prejudicial *State v. Clifton,* 549 S.W.2d 891, 895 (Mo.App.1977) and, thus, would be prejudicial unless the presumption is rebutted. *State v. Billingsley,* 534 S.W.2d 484, 485 (Mo.App.1975). The present facts do rebut the presumed prejudice.

Carol testified defendant picked her and Mary Jo up sometime between 8:00 p. m. and 9:00 p. m. Carol stated that she and Mary Jo were with defendant for "at least an hour." Mary Jo estimated that she and Carol were in the car with defendant from about 8:00 p. m. to 10:00 p. m. Thus, the state's evidence established the offenses occurred between 8:00 p. m. and 10:00 p. m.

Defendant's evidence established his presence elsewhere between 8:00 p. m. and 10:00 p. m. on the night in question. Defendant testified that, on the night in question, he arrived at Jay Barry's house at 7:30 p. m. to repair equipment belonging to the Jay Barry Band. He left Barry's house with a member of the band to go to a liquor store. He returned shortly thereafter and remained at Barry's house until 9:30 p. m. or 10:00 p. m. He then went home. Other members of the band corroborated his alibi. Jay Barry testified defendant was at Barry's house from 7:00 p. m. or 7:30 p. m. until 9:30 p. m. or 10:00 p. m. David Lewis testified that he went to the liquor store at the same time defendant did but in another car. Lewis switched cars at the liquor store and rode back to Barry's house with defendant. They arrived at Barry's house about 7:15 p. m. or 7:45 p. m. but no later than

8:30 p. m. Lewis also said defendant left Barry's house no earlier than 10:00 p. m. and no later than 11:00 p. m. Pat Brogan worked that evening with defendant on the band's equipment. Brogan said he was at the liquor store with defendant at about 8:00 p. m. Brogan also stated that defendant returned to Barry's approximately 10 minutes after Brogan did, and Brogan also said he left Barry's house at about 10:00 p. m. and defendant was still there.

The state's evidence thus established that the offenses occurred sometime between 8:00 p. m. and 10:00 p. m. There was no attempt by the state to prove the offenses could have taken place at any other time. Defendant's evidence established his presence elsewhere between 8:00 p. m. and 10:00 p. m. This was a case where the jury could believe either the state's evidence or defendant's but not both. In an almost identical situation, our Supreme Court held that the omission of the time the offenses occurred from verdict directing instructions was not prejudicial. *State v. Graves,* 588 S.W.2d 495, 498 (Mo.banc 1979). In support of its holding in *Graves,* the Court stated: L.C. 498

> "The evidence before the jury clearly contrasted the time of the alleged offense and the alibi defense of appellant. This is not a case where the jury could believe that the defendant was where his alibi defense and corroborating witnesses placed him and still believe that the defendant committed the crime."

While this rationale may appear to be illusive, we are constrained to follow *Graves,* and, consequently, we hold that the omission of the time the offenses occurred from the present instructions did not deprive defendant of his alibi defense.

Defendant next contends the court erred in submitting to the jury both the charge of assault and the charge of rape of Carol. He

---

5. These *Notes on Use* continue:

"Thus in a prosecution for sodomy committed sometime between 6 and 8 p. m., testimony of a witness for defendant that he was in a tavern from 6 to 8 p. m. on the date of the alleged offense would be sufficient to support an alibi defense .... In such case, the in-struction for the state should read 'that defendant did so on _____ between the hours of 6 and 8 p. m., etc.' ...." MAI–CR 12.50, *Notes on Use.*

The *Notes on Use* appended to MAI–CR 6.30 (kidnapping) do not refer to the submission of the time of day.

contends these submissions subjected him to multiple convictions for a single offense and, thus, placed him twice in jeopardy. He argues that the force used to prove the rape of Carol was the same force used to prove the assault upon her and, therefore, he contends the single crime of rape could not be split into two separate crimes. We disagree.

■ The state may not use a single act of force to convict a defendant of an assault and the additional violent crime of rape. *See State v. Neal*, 514 S.W.2d 544, 548–549 (Mo.banc 1974); *State v. Parsons*, 513 S.W.2d 430, 437–438 (Mo.1974); *State v. Richardson*, 460 S.W.2d 537, 539–540 (Mo. banc 1970). However, a defendant may be convicted of both rape and assault where separate acts of force were employed to commit the respective crimes. For example, there would be separate acts of force and, therefore, no double jeopardy where the defendant shot or otherwise attacked the victim after the rape had already been completed. *State v. Collett*, 526 S.W.2d 920, 933 (Mo.App.1975); *State v. Ross*, 523 S.W.2d 841, 843–844 (Mo.App.1975). Admittedly, when the force used to support the assault precedes the rape, proving the assault and the rape to be separate and distinct crimes may be difficult and, at times, impossible. *See State v. Grays*, 629 S.W.2d 466 (E.D.Mo.App., October 27, 1981); *see also, State v. Buford*, 582 S.W.2d 298, 303–304 (Mo.App.1979). Those problems of proof do not exist in the present case.

■ As previously noted, shortly after Carol and Mary Jo got into defendant's car, defendant ordered them onto the floor, while waving a wrench in a threatening manner. Carol grabbed for the wrench and defendant hit her with it. Defendant then ordered Carol to put her head in his lap, and, when she refused, he hit her again with the wrench. Despite this attack, Carol refused to comply with defendant's order. Defendant then ordered Carol onto the floor of the car and he turned his attention to Mary Jo. He ordered Mary Jo to commit fellatio, which she did until defendant stopped the car. During this time, Carol remained seated on the floor of the car. Defendant did order her to remove her clothes "a couple of times." When defendant stopped the car, he again ordered Carol to disrobe, and, when she refused, he began striking her again with the wrench. Carol resisted, but, when defendant's attack drew blood, she succumbed.

There is no need to indulge in abstruse metaphysics to show defendant first assaulted Carol and then raped her. Defendant initially attacked Carol to force her to commit fellatio. This attack was unsuccessful. There was no evidence nor sensible inference that defendant intended to rape Carol at this time. It was only after Mary Jo had committed fellatio that defendant turned his attention back to Carol and began a new attack on Carol which resulted in her being raped. Although both attacks did take place at the same location (in the car), there apparently was a substantial time interval between the two attacks. Moreover, the evidence clearly shows the initial attack was accompanied by an intent to have Carol commit fellatio and the second attack was accompanied by the separate and distinct intent to commit rape. Thus, there were two separate attacks. The first attack was completed when Carol was ordered onto the floor of the car. That attack was sufficient to support a charge of assault. The second attack was a separate assault and properly served as an element of the charge of rape. *See Vaughan v. State*, 614 S.W.2d 718, 722–723 (Mo.App.1981); *Compare State v. Buford*, 582 S.W.2d 298, 304 (Mo.App.1979).

Defendant next attacks the trial court's failure to grant a mistrial after the prosecutor commented, during closing argument, that defendant's mother and father would not testify for him. During the prosecutor's closing argument, the following exchange took place:

"(Prosecutor): Mr. Gibson testified when he left he saw his mom and dad. Where are they today to testify for him? His own mother and father? He wasn't there.

(Defense Counsel): There's no such evidence in this case.

THE COURT: Sustained.

(Defense Counsel): I'll ask that the last remark be stricken and the jury will disregard the last remark of counsel.

THE COURT: The objection has been sustained. And the jury will disregard the last remark.

(Prosecutor): His own mother and father wouldn't come in to testify.

(Defense Counsel): That's highly improper and I'm going to ask that a mistrial be declared.

THE COURT: The motion denied."

■ Defendant's complaint is neither clear nor explicit. Apparently, defendant's complaint is three pronged. First, he contends the prosecutor's argument was an improper comment on defendant's failure to call his mother and father as witnesses. Second, he argues the comment "personalized the jury against the defendant, by trying to make the jury believe the defendant's parents either did not care for their son or knew he is a liar." Third, he argues the prosecutor made an argument which the court had previously ruled objectionable and this was a "gross affront to the Court's authority." Defendant did not assert these objections to the prosecutor's comments at trial nor did he raise these objections in his motion for a new trial.[6] Therefore, these complaints are not preserved for our review. *State v. Jones,* 515 S.W.2d 504, 506 (Mo.1974); *State v. Underwood,* 530 S.W.2d 261, 264 (Mo.App.1975). Furthermore, even if we were to assume that the prosecutor's comments were improper, we would not find the trial court's failure to grant a mistrial amounted to plain error. To warrant relief under the plain error rule, we must find that the court's failure to grant a mistrial resulted in "manifest injustice or a miscarriage of justice." Rule 84.13(c). However, not "[e]very instance of a prosecutor exceeding the limits of legitimate argument is ... a

cause for declaring a mistrial. The declaration of a mistrial is, ..., a drastic remedy and should be exercised only in extraordinary circumstances where the prejudicial effect can be removed in no other way ... This determination rests largely within the discretion of the trial judge who observed the incident and can best gauge its prejudicial effect upon the jury ...." *State v. Raspberry,* 452 S.W.2d 169, 173 (Mo.1970). In this single, isolated instance, we cannot say the court abused its discretion and that this abuse worked a manifest injustice against defendant. *See State v. Burnfin,* 606 S.W.2d 629, 631 (Mo.1980).

As his final point, defendant contends he was entitled to a mistrial because several jurors saw him in handcuffs. This complaint has no merit.

None of the jurors testified that they saw the defendant in handcuffs. However, two jurors stated they saw defendant being led away during a recess, and the deputy sheriff, who escorted the defendant, testified defendant was handcuffed as he was led from the courtroom during that recess. In addition, after the recess, one of the deputy sheriffs apparently removed defendant's handcuffs in the presence of one juror. Removal of the handcuffs took about "five seconds."

■ Unless justified by good reason, it may be error to keep a defendant handcuffed for an extended period of time during trial. *See State v. Borman,* 529 S.W.2d 192, 194–195 (Mo.App.1975); *State v. Robinson,* 507 S.W.2d 61, 62–64 (Mo.App.1974). However, it is necessary and, thus, normal and regular to handcuff incarcerated defendants when they are being taken from one place to another. Sensible jurors would know this. There is no evidence here that more than normal, reasonable precautions were taken by the deputy sheriffs in charge of defendant's custody. *State v. Fields,* 487

---

6. In his motion for new trial, defendant asserted:

"The court erred in overruling defendant's timely motion for mistrial after sustaining the defendant's objection to the state's argument that 'the defendant's own mother and father would not come in as (alibi) witnesses

to his whereabouts on the night of October 11, 1977,' for the reason that the statement was not based on the evidence and so inflammatory and prejudicial that the Court's action was not sufficient to remove the prejudicial effect from the minds of the jury."

S.W.2d 560, 561 (Mo.1972); *see State v. Beal*, 470 S.W.2d 509, 515–516 (Mo.banc 1971).

The judgment is affirmed.

SMITH and SIMON, JJ., concur.