**STATE of Missouri, Respondent,**

v.

**Timothy K. FARMER, Appellant.**

No. 14554.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 10, 1986.

Motion for Rehearing or Transfer to
Supreme Court Denied
Nov. 3, 1986.

Application to Transfer Denied
Dec. 16, 1986.

Susan L. Hogan, Columbia, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen. Jefferson City, for respondent.

CROW, Chief Judge.

Timothy K. Farmer ("appellant"), found guilty by a jury of forcible rape, § 566.-030.1 and .2, RSMo Cum.Supp.1984, was sentenced as a prior offender, § 558.016.2, RSMo Cum.Supp.1984, to 30 years' imprisonment.

Appellant briefs two points. The first asserts that the trial court erred in allowing a police officer to testify that during the investigation, the victim, Mrs. J____, identified a photograph of appellant as the culprit. The second maintains that the trial court abused its discretion in barring appellant from questioning Mrs. J____ about her "prior sexual activity and previous relationship with appellant."

Appellant does not challenge the sufficiency of the evidence to support the verdict; consequently, we summarize only such testimony as is necessary to rule the assignments of error.

At the outset, one procedural item must be set in place. The transcript shows that the verdict was returned at 4:26 p.m., Friday, October 4, 1985. The "docket sheet" shows that the verdict was returned at "4:26" on "10–5–85." We take judicial notice that October 5, 1985, was a Saturday. *State v. Bubenyak*, 331 Mo. 549, 56 S.W.2d 43, 44[1] (1932).

Rule 29.11(b), Missouri Rules of Criminal Procedure (16th ed. 1985), provides, in pertinent part:

> "A motion for a new trial ... shall be filed within fifteen days after the return of the verdict. On application of the defendant made within fifteen days after the return of the verdict and for good cause shown the court may extend the time for filing of such [motion] for one additional period not to exceed ten days."

Nothing in the record furnished us shows that an extension of time was requested by appellant or granted by the trial court.

On October 16, 1985, appellant, through his attorney,[1] filed in the trial court a "Motion for Judgement of Acquittal Not Withstanding the Verdict or in the Alternative for a New Trial." Under Rule 29.11(b), *supra*, such motion was timely, irrespective of whether the date of the verdict was October 4 or October 5. However, such

---

1. The attorney representing appellant in this appeal is not the attorney who represented appellant in the trial court.

motion failed to mention either of the points briefed by appellant in this appeal.

On October 23, 1985, appellant, through his attorney, filed an "Amended Motion for Judgment of Acquittal Not Withstanding the Verdict or in the Alternative for a New Trial." That motion contained an allegation of error corresponding to the second assignment of error in appellant's brief. However, the amended motion was untimely, irrespective of whether the date of the verdict was October 4 or October 5.

Rule 29.11(d) provides, in pertinent part:

"In jury tried cases, allegations of error to be preserved for appellate review must be included in a motion for new trial except that questions of jurisdiction of the court over the offense charged, questions as to whether the indictment or information states an offense and questions authorized by Rule 27.07 to be presented by motion for judgment of acquittal need not be included in a motion for new trial."

Neither of the points relied on in appellant's brief falls within any of the exceptions in Rule 29.11(d), above.

■ Appellant's amended motion of October 23, 1985, being untimely, was a nullity, preserving nothing for appellate review. *State v. Berry*, 609 S.W.2d 948, 951[2] (Mo. banc 1980). Moreover, appellant's second point was not saved by designating the motion of October 23 an "amended" motion, as that did not permit its filing date to relate back to October 16. *Id.*

That being so, both of appellant's assignments of error are before us for *ex gratia* review for plain error only. *State v. Hill*, 628 S.W.2d 361, 362[1] (Mo.App.1981).

Mrs. J——, age 23 at time of trial, testified that on March 20, 1985, she was "separated" from her husband, and was residing with her two sons, ages six and four. That night, according to Mrs. J——, she went to bed about 9:30, having made certain that the front door and the back door of her house were locked, each door secured by a chain. Mrs. J—— explained that she occupied one bedroom and that her sons occupied another bedroom.

Some time after midnight, Mrs. J—— awoke and saw an intruder near her bed. Then, so she said, everything went black. Asked the next thing she remembered, Mrs. J—— answered, "I remember I was in my living room, standing in front of my heater, and he was standing up—I was standing up and he had his arm around my throat like this, and I had my head leaned back toward his head."

Mrs. J——'s testimony continued:

"Q Were you able to turn your head even though his arm was around your neck?

A Yes, I was able to turn my head.

Q Did you turn your head to the same side his face was?

A I leaned back—he had his arm back around my throat and I was in a position like this. All I had to do was turn my head a little, or cut my eye, and I could see his face.

Q Were you able to do that?

A Yes.

Q Whose face was it?

A His.

Q Is that Mr. Farmer's face?

A Yes, it is."

Simultaneously with the last answer, Mrs. J—— pointed to appellant.

As observed earlier, appellant does not contend that the evidence was insufficient to support a finding that he forcibly raped Mrs. J——. Therefore, we need not recite the evidence on that aspect of the case.

A police officer testified he interviewed Mrs. J—— about 6:40 a.m., March 21, at a hospital where she had been taken for examination and treatment.[2] The officer's testimony included this:

"Q Did she identify her attacker?

A Yes, Sir.

Q How did she identify him?

2. Mrs. J—— testified she was hospitalized three days following the attack. X rays showed she had sustained a bruised kidney. Additionally, her eyes were bloodshot and swollen, her face was swollen, and it was difficult for her to swallow.

A She called him Scotty Farmer."

The officer recounted that he returned to the hospital about 2:30 p.m., March 21, carrying eight photographs. One was a "side view" of appellant; another was a "front view" of appellant. The remaining six photographs were, respectively, a side view and a front view of each of three different men.

The officer explained that he "mixed" the side view photograph of appellant with the side view photographs of the other three men, and handed the four photographs to Mrs. J____. According to the officer, Mrs. J____ identified the photograph of appellant as a photograph of her attacker. The officer repeated the process with the four front view photographs. Again, said the officer, Mrs. J____ picked out the photograph of appellant.

Defense counsel voiced no objection to any of the officer's testimony.

At trial, Mrs. J____ was shown the same eight photographs the officer had shown her at the hospital. Mrs. J____ confirmed that she had, at the hospital, identified the two photographs of appellant. In the presence of the jury, Mrs. J____ picked out the same two photographs, explaining that she knew appellant as "Scotty Farmer."

In his first point, appellant tells us that the trial court committed plain error in allowing the police officer to testify that Mrs. J____, at the hospital, (1) named appellant as her assailant, and (2) picked out the two photographs of him.

■ Plain error and prejudicial error are not synonymous terms. No precise method exists for determining plain error, but it can be said that plain error includes prejudicial error which so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Valentine,* 646 S.W.2d 729, 731[4] (Mo. 1983); Rule 30.20, Missouri Rules of Criminal Procedure (17th ed. 1986).

Appellant bases his first point on *State v. Degraffenreid,* 477 S.W.2d 57 (Mo. banc 1972). There, the trial court permitted a police officer, over the accused's objection, to testify that an eyewitness, the day after a burglary, identified a photograph of the accused as one of the burglars, and later picked the accused out of a lineup. The eyewitness, age 78, did not know the accused, and, during the burglary, saw the accused less than two minutes, at a distance of 75–80 feet. At trial, the eyewitness identified the accused, and related that he (the witness) had identified the photograph of the accused, and had picked the accused out of the lineup.

The Supreme Court, noting that the eyewitness' testimony regarding his "extrajudicial identification" of the accused was proper, *id.,* at 62[12], nonetheless held it was prejudicial error to receive in evidence the testimony of the officer concerning the eyewitness' identification of the accused. *Id.* at 64–65. The opinion explained:

"... the [accused] was identified by one eyewitness ... as the culprit. The record indicates [the eyewitness] was strong and positive in his identification of [the accused]. The defense was basically alibi and in support of this position [the accused] and one other witness testified that [the accused] was at another place at the time of the offense. It is difficult for this court to conclude with any reasonable assurance of being correct that the testimony of [the police] officer ... corroborating the identifying witness as to the two extrajudicial identifications did not, in the minds of the jurors, confirm the believability of [the eyewitness'] testimony and thereby tip the scales against [the accused]." *Id.* at 64.

The instant case, however, is factually unlike *Degraffenreid.* Here, Mrs. J____ testified that prior to the incident in question, she had seen appellant twice at her house and once at a store. Asked to describe the two occasions at her house, Mrs. J____ testified:

"The first time, I was sitting on my porch one evening and he came up in my yard where I was sitting on my porch, and I don't recall the exact conversation, but he in so many words let me know

that he was interested in talking to me. And I also recall telling him that I did have a husband and that me and my husband was trying to get back together.

And the second time he came to my house, he knocked on my door and I asked who he was, and he said, 'Scotty Farmer.' And I asked him what he wanted and he said could he come in. And I told him no and he left."

Asked the date of appellant's first visit, Mrs. J___ replied, "It was in August."

It is obvious from that testimony that Mrs. J___, unlike the eyewitness in *Degraffenreid*, was acquainted with appellant before the alleged crime. Consequently, Mrs. J___, in making her extrajudicial identification of appellant, was not identifying someone she had seen only at the time of the crime, for a brief period, at long distance.

In *State v. Gibson*, 633 S.W.2d 101 (Mo. App.1982), the accused was convicted of kidnapping, assaulting and raping one girl, and of kidnapping, raping and sodomizing another girl. A police officer testified, over objection, that one of the girls identified a photograph of the accused as the culprit. The officer testified, without objection, that the other girl also identified the same photograph. Both girls identified the accused at trial. On appeal, the accused maintained that allowing the officer to testify about the girls' extrajudicial identifications of him constituted reversible error. The opinion in *Gibson* distinguished *Degraffenreid* on the ground that the two girls had been in the presence of the accused, at close range, for about an hour "under circumstances which would sensitize their memory." *Gibson*, 633 S.W.2d at 104. Affirming the convictions, the court said:

"Unquestionably, the identifying evidence here was strong and heavily weighted against the defendant. Thus, we cannot say, as the Court said in *Degraffenreid*, that [the police officer's] hearsay testimony 'tip[ped]' the scales against defendant." *Gibson*, 633 S.W.2d at 104.

In our view, *Gibson* would supply adequate authority for rejecting appellant's first assignment of error. We need not, however, rely on *Gibson* because, on June 17, 1986, after appellant had filed his brief with us, the Supreme Court of Missouri decided *State v. Harris*, 711 S.W.2d 881 (Mo. banc 1986). There, a short time after an attempted robbery, the victim was shown three men by police officers. The victim pointed out the accused as the culprit, and, at trial, made a positive identification of him. On appeal, the accused contended a mistrial should have been granted when a police officer testified about the victim's extrajudicial identification of the accused. Affirming the conviction, the opinion stated:

"The issue then, is whether testimony by a police officer or similar witness to a lineup or other extrajudicial identification should be admissible to the same extent as similar testimony by a crime victim who may testify that he identified the defendant in a lineup or other extrajudicial identification. There is no logical distinction between the victim's testimony and that of another person. To the extent that the *Degraffenreid* rule distinguishes these two classes of testimony based on hearsay considerations, the case is no longer to be followed. This does not foreclose the trial judge in his discretion from sustaining objections to such evidence based on other traditional grounds, but we hold today that such evidence is no longer presumptively inadmissible where declarant and the corroborating witness both testify and are subject to cross-examination." *Harris*, 711 S.W.2d at 884.

The instant case falls squarely within *Harris*. Both Mrs. J___ and the officer who testified about Mrs. J___'s extrajudicial identification of appellant were called as State's witnesses, and each underwent cross-examination by appellant's counsel. Additionally, we point out that appellant occupies an even weaker position than the accused in *Harris*, in that appellant's counsel interposed no objection to the officer's

testimony regarding Mrs. J____'s extrajudicial identification of appellant.

■ It follows from what we have said that the trial court in the instant case committed no error, plain or otherwise, in failing *sua sponte* to bar the officer from testifying about Mrs. J____'s extrajudicial identification of appellant. Appellant's first point is, accordingly, denied.

Appellant's second point states:

"The trial court abused its discretion in overruling appellant's motion to be allowed to question the victim, [Mrs. J____], regarding her prior sexual activity and previous relationship with appellant, because such evidence was relevant to a material fact or issue in the case, in that such evidence would have shown that [Mrs. J____] had had a serious relationship with appellant and had willingly had sexual intercourse with appellant prior to the alleged incident, which would constitute evidence of immediate surrounding circumstances of the alleged crime."

As noted *supra*, this point, like the first, is before us for plain error review only.

Prior to trial, appellant filed a "Motion to Offer Evidence of Sexual Conduct of Complaining Witness," stating, in pertinent part:

"1. That defendant believes that the evidence will show that the complaining witness, [Mrs. J____], had previous sexu-

al conduct with defendant, prior to the occurrence of this alleged incident.

2. Defendant intends to offer evidence by defendant's testimony, and his witnesses regarding prior sexual conduct, and an actual relationship between defendant and complaining witness, [Mrs. J____]."

In an obvious attempt to comply with § 491.015, RSMo 1978,[3] appellant attached to his motion an "Offer of Proof." It said, in pertinent part:

"Defendant will prove by evidence of defendant's testimony, and defendant's witnesses, Anthony Gary and defendant's brother, that defendant had a relationship with the complaining witness, [Mrs. J____], prior to this alleged incident. By this evidence, defendant will show that the complaining witness, [Mrs. J____] willingly had sexual intercourse with defendant numerous times prior to the alleged incident, and that defendant and the complaining witness had a serious relationship prior to the alleged incident."

A careful reader will notice a subtle difference between appellant's second point on appeal and his motion and offer of proof in the trial court. Appellant's second point on appeal complains that the trial court erred in barring appellant from questioning Mrs. J____ about her prior sexual activity and relationship with him. Appellant's mo-

---

3. Section 491.015, RSMo 1978, provides, in pertinent part:

"1. In prosecutions for the crimes of rape, ... opinion and reputation evidence of the complaining witness' prior sexual conduct is inadmissible; evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:

(1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent and the evidence is reasonably contemporaneous with the date of the alleged crime; or

(2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;

(3) Evidence of immediate surrounding circumstances of the alleged crime; ...

2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.

3. If the defendant proposes to offer evidence of the sexual conduct of the complaining witness under this section, he shall file with the court a written motion accompanied by an offer of proof or make an offer of proof on the record outside the hearing of the jury. The court shall hold an in camera hearing to determine the sufficiency of the offer of proof any may at that hearing hear evidence if the court deems it necessary to determine the sufficiency of the offer of proof...."

tion and offer of proof in the trial court, however, sought permission to present testimony by *appellant, appellant's brother* and *Anthony Gary* that Mrs. J___, prior to the incident in question, had willingly engaged in sexual intercourse with appellant numerous times. Nothing in appellant's motion or offer of proof indicated that appellant desired to question Mrs. J___ on that subject.

During an in camera hearing prior to voir dire of the jury panel, appellant's counsel told the trial court: "I am not interested in [Mrs. J___'s] sexual activities with other men other than within a couple days or so of the occurrence. I'm not going to go back any further than that. And then I would like to introduce evidence as to her sexual activity with the defendant within, say, six to eight months of the occurrence of this alleged event."

The prosecutor stated he had no objection to appellant's counsel asking Mrs. J___ "whether she had sexual relations with the defendant on the day of or the day before or two days before the alleged occurrence of this incident." Additionally, the prosecutor said he had no objection to appellant's counsel asking Mrs. J___ about sexual relations with other men on "the day of this alleged occurrence or the day or two prior to this alleged occurrence, because during that period of time I think it would be relevant and material to the issues."

The prosecutor's position was, it appears to us, based on the fact that about four hours after Mrs. J___ arrived at the hospital, a physician, utilizing a "swab," obtained a specimen from Mrs. J___'s vagina. Laboratory analysis of the specimen indicated that spermatozoa had been ejaculated into her vagina.

Appellant's counsel, in response to the prosecutor's statements, argued that evidence of appellant's "ongoing relationship" with Mrs. J___ "will lead to information for the jury's viewing that this incident was not committed by the defendant."

That argument, on close inspection, is susceptible of two interpretations: (1) inasmuch as Mrs. J___, in the past, had allegedly submitted willingly to appellant's amorous entreaties, she voluntarily did so on the occasion in question, or (2) because appellant, in the past, had allegedly enjoyed an intimate relationship with Mrs. J___, he would not have forced his intentions on her on the night in question, consequently the rapist must have been someone other than appellant.

Interpretation "1" above, while seemingly the more plausible of the two, is inconsistent with appellant's evidence at trial.

Appellant called, as his only witness,[4] his brother, Patrick, who testified that appellant, at the time Mrs. J___ was allegedly raped, was at a house occupied by Patrick, Patrick's mother, and Patrick's sister. Patrick's testimony, had the jury believed it, would have compelled a finding that either (a) the man who had sexual intercourse with Mrs. J___ at the time in question was not appellant, or (b) no man had sexual intercourse with Mrs. J___ at the time in question. Under either finding, the jury would never have reached the issue of whether Mrs. J___, on the occasion in question, *consented* to sexual intercourse with *appellant.* Therefore, in view of appellant's alibi defense, interpretation "1" supplies no basis for the admission of evidence that Mrs. J___, on earlier occasions, had voluntarily engaged in sexual intercourse with appellant.

Interpretation "2" above is evidently the one appellant urges on appeal. In the argument portion of his brief, appellant says "the jury could have inferred from the fact of an ongoing relationship between appellant and [Mrs. J___] that appellant would not have committed the rape." This premise, had it been accepted by the jury, would have compelled a finding that either (a) Mrs. J___ knowingly and maliciously made a false accusation that appellant raped her, or (b) Mrs. J___ was raped by someone other than appellant, and made an

4. Appellant declined to testify.

honest mistake in identifying appellant as the culprit.

Nothing in appellant's offer of proof suggested that Mrs. J_____ had any motive to falsely accuse appellant of raping her, and no such contention is made on appeal. Thus, if the evidence appellant says he wanted to present is to be declared admissible, it would have to be on the theory that a man who, in times past, had been accepted by a woman as her lover, would not, at a later time, compel her by force to submit to sexual relations with him. Why that would be so is not explained by appellant. The only two hypotheses that occur to us are: (a) because of the past intimacies, no matter how remote in time, the man would harbor such tender feelings for the woman that he could not bring himself to force her to submit to his lust, or (b) because the woman could easily identify the man, his fear of prosecution would deter him from the crime.

■ We know of no case holding such evidence admissible on either of those hypotheses. Indeed, such a holding would be contrary to subdivision 1 of paragraph 1 of § 491.015, RSMo 1978,[5] which bars evidence of the sexual conduct of the complaining witness with the accused except where such conduct is offered to prove *consent* on the part of the complaining witness *and* is reasonably contemporaneous with the date of the alleged crime.

Here, as we have noted, appellant does not maintain that the proffered evidence was relevant on the issue of consent. Appellant's disavowal of guilt was based on Patrick's testimony that appellant was at Patrick's residence at the time Mrs. J_____ was allegedly raped. Appellant did not at trial, nor does he here, contend that on the occasion in question, Mrs. J_____ voluntarily engaged in sexual intercourse with him.

Furthermore, nothing in appellant's offer of proof indicated how recently Mrs. J_____ had voluntarily been sexually intimate with him. Consequently, there was no showing that such alleged conduct was "reasonably

contemporaneous with the date of the alleged crime," § 491.015.1(1), or that such conduct was evidence of "immediate surrounding circumstances of the alleged crime," § 491.015.1(3).

As a final theory in support of his second assignment of error, appellant argues that the prosecutor, in rebuttal to appellant's alibi defense, presented the testimony of Anthony Gary, who told the jury that he (Gary) saw appellant go to Mrs. J_____'s home about 11:25 or 11:30 p.m., March 20, 1985. Gary explained that he saw the door "opening up," and watched as appellant went inside. At that point, according to Gary, he (Gary) departed without waiting for appellant to emerge. Appellant says Gary's testimony was "significant" because evidence presented by the State in its case in chief indicated that Mrs. J_____'s assailant gained entry by breaking the chain securing her back door.

We agree that Gary's testimony that appellant was freely granted admittance to Mrs. J_____'s home on the night in question was relevant to the issue whether he was the rapist, particularly in view of the State's evidence that the rapist made a forcible entry. However, when we keep in mind that appellant's theory of admissibility of Mrs. J_____'s alleged past sexual relationship with him was that it tended to prove that he would not have forced her to submit to sexual intercourse with him, we fail to see how Gary's testimony rendered such evidence admissible.

■ What the jury had to decide, as we have emphasized, was not whether Mrs. J_____, on the occasion in question, voluntarily engaged in sexual intercourse with appellant, but instead whether, if she was indeed raped, appellant was the rapist. In such circumstances, evidence that Mrs. J_____, in times past, had voluntarily engaged in sexual intercourse with appellant would not, as we see it, tend to prove he was not the culprit. If anything, it would enhance Mrs. J_____'s ability to recognize and identify him.

---

**5.** Footnote 3, *supra.*

Furthermore, after Anthony Gary testified, appellant did not argue to the trial court that Gary's testimony had opened the door to admission of the evidence outlined in appellant's offer of proof. Given that situation, we believe the trial court's ruling on appellant's pretrial motion under § 491.015.3, RSMo 1978,[6] should be treated the same as a ruling on a motion in limine. If a trial court, at the outset of a trial, rules that a party cannot present certain evidence, and if, during the trial, developments occur which cause such party to believe that such evidence has become admissible, such party must bring the issue to the attention of the trial court so that the court can consider such developments and make a reasoned decision in light of what has transpired. *Cf., Robbins v. Jewish Hospital of St. Louis*, 663 S.W.2d 341, 348[14] (Mo.App.1983). Having failed to do that, appellant should not now be heard to say that the evidence outlined in his offer of proof became admissible once Anthony Gary testified.

Reiterating that appellant's second point is before us for plain error review only, we find no manifest injustice or miscarriage of justice in the matter complained of by appellant in that assignment of error. The absence of prejudice is demonstrated by the fact that Mrs. J____, during her direct examination by the prosecutor, disclosed that she had engaged in sexual relations with a man—not appellant—"[a] day or two" before the incident in question. This testimony supplied an alternative source of the physical evidence that indicated Mrs. J____ had recently engaged in sexual intercourse. § 491.015.1(2), RSMo 1978.

We note, in conclusion, that in a recent decision, *State v. Jones*, 716 S.W.2d 799 (Mo. banc 1986) the Supreme Court of Missouri narrowed the scope of admissibility of evidence of the prior sexual conduct of the complaining witness under § 491.015. We need not, however, rule the instant case on the basis of *Jones*, as the evidence appel-

lant says he wanted to present would have been inadmissible even prior to *Jones*:

Judgment affirmed.

GREENE, P.J., and TITUS, J., concur.